(Decided 12th February, 1875.)

---

JAMES A. BRAMBLE, and others *vs.* STATE OF MARYLAND, use of BENJAMIN F. TWILLEY.

*Insufficient defence by Sheriff when sued on his Bond to recover the amount of Exemption fixed by the Act of 1861, ch. 7—Estoppel in pais—Construction of the Act of 1870, ch. 195, repealing the Sixth section of the Act of 1861, ch. 7—Pleading.*

It is no defence for a sheriff who under certain writs of *fieri facias* has seized and taken in execution a farm, the property of the defendant, and sold it for a sum exceeding $100, and has received the purchase money, to say when sued by the defendant to recover under the Act of 1861, ch. 7, the amount of exemption fixed by that Act, that the defendant failed to make any claim or demand for it until a long time after it had been distributed and applied by him to some other purpose or claimant. When money comes into his hands as sheriff, it is his duty to distribute and apply it to the parties entitled, and length of time in making a demand for it will not excuse him—unless such a period of time has elapsed as will enable him to defend himself and his bond by a formal plea of limitations.

Bramble, *et al. vs.* State, use of Twilley.

To sustain a plea upon the ground of an estoppel in pais, it is not sufficient to charge that the plaintiff did certain acts or made certain admissions: it must also be charged that such acts or admissions influenced the defendant in his conduct.

By the Act of 1861, ch. 7, property to the extent of $100 was exempted from execution. The Act of 1870, ch. 195, which repealed the sixth section of the former Act and restricted its benefits to actual *bona fide* residents of the State, went into effect on the 4th of April, 1870. Under writs of *fieri facias* the property of a non-resident was seized by the sheriff, and being incapable of a division so as to set apart a portion of it of the value of $100, without loss and injury to all parties concerned, the whole was sold on the 1st of February, 1870. HELD:

That the right of the party whose property was thus sold, to one hundred dollars of the proceeds of sale as provided by the Act of 1861, ch. 7, became fixed immediately on the consummation of the sale on the 1st of February, 1870, and was so far complete and vested, that it was not affected by the repealing Act of 1870, ch. 195, which went into effect on the 4th of April, 1870.

A sheriff who has levied upon land and sold it under executions and received the purchase money therefor, cannot plead as a matter of defence to an action on his bond to recover $100 out of the proceeds of sale, as provided by the Act of 1861, ch. 7, that the plaintiff "had no legal estate" in the property sold.

APPEAL from the Circuit Court for Dorchester County.

To the statement of the case as contained in the opinion of this Court, it may be added that after the Court below overruled the demurrer to the defendant's first plea, the plaintiff replied that the defendant James A. Bramble, never brought the proceeds of sale into Court for distribution, and they were never distributed and applied under the order and direction of the Court, as alleged in the first plea. Issue was joined on the plaintiff's replication. Four exceptions were taken by the defendants: the first, second and third were taken to the rejection of evidence; the fourth to the ruling of the Court in rejecting their prayers and granting the prayer of the plaintiff. The defendant's prayers need not be stated. By the plaintiff's

prayer the jury was instructed to find for the plaintiff if they believed the facts set forth in his declaration, and that he was entitled to the sum of $100, with interest thereon from the date of the first demand therefor. The jury rendered a verdict in accordance with this instruction, and judgment was entered thereon. The defendants appealed.

The cause was submitted on briefs to BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*Clement Sulivane* and *Daniel M. Henry,* for the appellants.

The evidence excluded was admissible in proof of agency, and to maintain the first, second and third pleas. *Henderson vs. Mayhew, et al.,* 2 *Gill,* 393; *National Mechanics' Bank of Baltimore vs. National Bank of Baltimore,* 36 *Md.,* 5.

The demurrer to the third plea should have been overruled. The facts alleged in the plea constituted a valid bar to the plaintiff's claim as an estoppel in *pais. Alexander vs. Walter,* 8 *Gill,* 247; *McClellan and Wife vs. Kennedy, et al.,* 8 *Md.,* 230; *Donovan vs. Firemen's Ins. Co. of Baltimore,* 30 *Md.,* 155; *Frazier vs. Gelston, et al.,* 35 *Md.,* 298; *Browne vs. Trustees M. E. Church of Baltimore City,* 37 *Md.,* 108; *Baltimore & Ohio R. R. Co. vs. Strauss, et al.,* 37 *Md.,* 237; *Simons vs. Steele,* 36 *N. H.,* 73; *Troy and Boston R. R. Co. vs. Potter,* 42 *Vt.,* 265; *Waters' Appeal,* 35 *Penn.,* 523; *Manufacturers and Traders' Bank vs. Hazard,* 30 *N. Y.,* 226; *Brown vs. Bowen,* 30 *N. Y.,* 519.

The fourth plea was sufficient in law, and should have been sustained. The Act of 1870, ch. 195, which took effect April 4th, 1870, repealed sec. 6 of the Act of 1861, ch. 7, and expressly restricted the benefits of the exemption provided for, to actual *bona fide* residents of the State

of Maryland. The Act of 1870, ch. 195, went into effect between the sale by the sheriff and the return day of the writs.. The Legislature had the constitutional right to pass the Act of 1870, and it controls this case. It is not *ex post facto*, and it does not impair the obligation of contracts, or interfere with vested rights, but merely puts an end to a statutory exemption or legislative gratuity. So far as non-residents are concerned, it is retrospective, but is not on that account invalid. *Elliott vs. Elliott*, 38 *Md.*, 357.

A law passed after judgment below, may cause a reversal of the judgment in the Appellate Court. *State, use of Mayor, &c., vs. Norwood, et als.*, 12 *Md.*, 195; *Price, et al. vs. Nesbitt, et al.*, 29 *Md.*, 263; *United States vs. Schooner Peggy*, 1 *Cranch*, 110.

The repeal of a stamp act or usury law, or of a law granting a penalty, is valid, even after a right of action has accrued, or after suit has been instituted. *Reynolds vs. Furlong*, 10 *Md.*, 318; *Atwell vs. Grant*, 11 *Md.*, 101; *Baugher vs. Nelson*, 9 *Gill*, 302; *Oriental Bank vs. Freeze*, 6 *Shep.*, 109; *Cooley's Con. Lim.*, 383.

But there is no vested right in statutory privileges and exemptions. Exemption from taxation, when not based upon consideration, and exemptions of property from execution, are always subject to recall at any time. *Cooley's Cons. Lim.*, 383; *Bull vs. Conroe*, 13 *Wis.*, 238.

*Charles E. Hayward, Sewell T. Milbourne* and *James Wallace,* for the appellee.

BRENT, J., delivered the opinion of the Court.

This is an action upon a sheriff's bond to recover under the Act of 1861, ch. 7, the amount of exemption fixed by that Act. The declaration charges, that the sheriff, by virtue of several writs of *fieri facias*, seized and took in execution a farm of Twilley, the appellee, " and after giv-

ing due notice according to law, he, the said Bramble, as sheriff, on the 1st day of February, 1870, did sell said farm to satisfy and pay said writs of *fieri facias* at and for a sum greater than the sum of one hundred dollars; * * * that the same was the only property owned by said Twilley liable to execution, and that said farm could not be divided so as to set apart a portion thereof of the value of one hundred dollars, without loss and injury to all the parties concerned, and it was so determined by three disinterested appraisers duly summoned to appraise the same according to law; and for that, neither the said James A. Bramble, nor any person for or on his behalf, has ever paid unto the said Benjamin F. Twilley, or to any person for him, the sum of one hundred dollars, or any sum, out of the proceeds of said sale, as by law he was required to do, although, &c." To this declaration, five pleas were filed. The *first* alleges that the sheriff faithfully performed the duties required of him, that he brought the whole proceeds of sale into Court, and that they were duly distributed under the order and direction of Court. The *second*, that the plaintiff waived all claim, if any he had, to the sum of one hundred dollars of the proceeds of said sale. " And for a *third* plea, the defendants say, that the said Benjamin F. Twilley had notice of said writs of *fieri facias*, and of all the proceedings of the sheriff thereunder, and altogether failed and neglected to make any claim of exemption of any sum of money thereunder, until a long time after the proceeds of said sale had been distributed and applied." "And for a *fourth* plea, the defendants say, that at the time of the issuing the writs of *fieri facias,* in the declaration mentioned, the said Twilley was not, and that he never since has been an actual, *bona fide* resident of the State of Maryland." And the *fifth* plea is to the effect that he never had a *legal estate* in the farm sold.

Issue was taken to the *second* plea, and a demurrer filed to the *first, third, fourth* and *fifth* pleas. The demurrer to

the first plea was overruled and sustained as to the third, fourth and fifth.

In sustaining the demurrer to these pleas, we think the Circuit Court decided correctly. It is no defence for a sheriff, if he has received money which is properly payable to another, to say, when sued for it, as he has done in his third plea, that the party failed to make any claim or demand for it until a long time after it had been distributed and applied by him to some other purpose or claimant. When money comes into his hands as sheriff, it is his duty to distribute and apply it to the parties entitled, and length of time in making a demand for it will not excuse him—unless such a period of time has elapsed as will enable him to defend himself and his bond by a formal plea of limitations. It is, however, argued, that inasmuch as this plea charges that Twilley "had notice of the said writs of *fieri facias,* and of all the proceedings of the sheriff thereunder," and failed to make any demand upon him until after the proceeds of the sale of his land had been distributed and applied, it sets up as against him an *estoppel in pais,* and a number of cases is referred to in support of the argument. It will be found, in looking at the authorities upon this point, that if it is sought to sustain the plea upon the ground of an estoppel, the allegations contained in it do not go far enough. It is not sufficient to charge that the plaintiff did certain acts, or made certain admissions, but it must also be charged that such acts or admissions influenced the other party in his conduct. In the case of *Heane vs. Rogers,* 9 *Bar. & Cres.,* 577, cited in *Alexander vs. Walter,* 8 *G.,* 252, it is said—"There is no doubt that the express admissions of a party to the suit, or admissions implied from his conduct, are evidence against him ; but we think he is at liberty to prove that such admissions were mistaken or were untrue, and is not estopped or concluded by them unless another person has been induced by them to alter his condition.

In such case, a party is estopped from disputing their truth with respect to that person, (and those claiming under him,) and that transaction ; but as to third parties he is not bound." And so in *The Welland Canal Co. vs. Hath-away,* 8 *Wend.,* 483 : " An estoppel is so-called because a man is concluded from saying and doing any thing, even the truth, against his own act or admission. * * As a general rule a party will be precluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another and did so influence it, and when such denial will operate to the injury of the latter. * * * All the cases, in which the acts or admis-sions of a party are adjudged to operate against him in the nature of an estoppel, are generally cases where in conscience and honest dealing he ought not to be per-mitted to gainsay them." See also *Homer vs. Grosholz & Coquentin,* 38 *Md.,* 520. These principles are so well recognized in the law of *estoppels in pais,* that it is unne-cessary to cite other authorities to sustain them. The plea in this case only sets forth that the plaintiff had notice of what the sheriff intended to do, and did not make any demand upon him until long after the money in question was distributed and applied. There is no pretence that the conduct of the plaintiff in any way influenced the action of the sheriff. The facts stated in the plea might be some evidence of a waiver, but they are certainly wholly insuffi-cient to constitute an *estoppel in pais.*

The question presented by the demurrer to the fourth plea, is the effect upon this case of the Act of 1870, ch. 195, excepting non-residents from any benefit of an ex-emption. The law of 1861, ch. 7, being general in its terms, exempts the property of every one alike from execu-tion to the extent of one hundred dollars. The law of 1870, which repeals the 6th section of that law and restricts its benefits to actual *bona fide* residents of this State, went into effect on the 4th of April, 1870. The

sale of the land, out of which this action grows, was made on the 1st of February, 1870, and the question arises does the Act of April, 1870, govern this case. This will depend upon the point of time, when the right of the plaintiff to the exemption money now claimed became complete and vested.

The power of the Legislature to repeal at will laws exempting certain property from execution or taxation, unless they are in the nature of a contract, is not doubted. Laws of this kind rest upon reasons of public policy, and are changed as the varying circumstances may require. *Cooley on Con. Lim., sec.* 383. And although "the citizen has no vested right in statutory privileges and exemptions," (*Ibid.*) it cannot be doubted he may acquire a vested right under the operation of the statute, which cannot be affected by its repeal. If at the time of the levy in this case, a part of the land taken in execution had been set apart for Twilley, without doubt his right would have immediately attached, and could not have been affected by a subsequent repealing Act. As this division could not be made, without loss and injury to all parties concerned, the event occurred provided for by the 3rd section of the Act of 1861, which declares, that "then the whole shall be sold, and the defendant whose property is so sold, shall have one hundred dollars of the proceeds in money." By the terms of this section, and in reading it in connection with the preceding one in regard to a division of the property, we think the right of the party to this one hundred dollars is fixed immediately upon the full consummation of the sale, and that it is then complete and vested. This being so the right of Twilley to the money sued for in this case became fixed on the 1st day of February, 1870, and was so far complete and vested that it is not affected by the repealing Act of the 4th of April, 1870. The many decisions that penalties cannot be enforced by a judgment, after a repealing Act, even if passed while the case is pend-

ing, although resting upon the same principle as the present case, cannot govern it. A penalty is not consummate and fixed until final judgment, and it is therefore that a repealing Act before such judgment prevents it from ever being enforced. *Keller vs. State*, 12 *Md.*, 322. While in the present case, the right of the plaintiff, as already stated, is made by the terms of the law fixed and complete immediately upon the sale of his property by the sheriff, and does not, as in the case of a penalty, require a final judgment to perfect it.

The fifth plea, it may be assumed, has been abandoned by the appellants' counsel, as they have made no reference to it in their argument. A sheriff, in a suit like the present one, cannot plead as a matter of defence, that the plaintiff "had no *legal* estate" in the farm sold. The plea tenders a collateral issue, and is in no respect an answer to the breach set out in the declaration. The charge is, that the sheriff levied upon and sold the land of the plaintiff under executions against him, and received the purchase money therefor, out of which purchase money the plaintiff claims to be entitled to a certain sum. If these allegations are established it is wholly immaterial whether the plaintiff had a "*legal* estate" in the land sold, or not.

The next exception is to the rejection of testimony. The defendants, to prove that a certain John Manning acted as the agent of Twilley, and in that capacity forbid the sale, placed Manning upon the stand, who proved that he was not the agent of Twilley. They then offered to prove by James A. Bramble, one of the defendants, that Manning was at the sale, and made statements from which he understood him to be the agent of Twilley. This offer, upon objection, was refused by the Court. There are many objections fatal to the admissibility of such proof. It was an offer to introduce in evidence the inferences of a witness from what he had heard, and also the declarations of a

third person, then present in Court, to bind another as his principal, not only without any previous proof of the agency, but after positive proof that he was not the agent.

The next exception is also to the rejection of testimony. The defendants to prove the agency of Manning, and "also to prove an estoppel of the said Twilley in this suit," offered the record of a case in the Circuit Court for Dorchester county, for rents, between Lecompte, purchaser of the land at the sheriff's sale, and Handley, trustee under the will through which Twilley's interest in the land came, "it being also proved that said Twilley's interest in said rents had been assigned to John Manning, who employed counsel to defend said suit." That record is not contained in the record before us, and we cannot see from the offer, as it is presented by the record here, what possible connection that case can have with the present, either in establishing the agency of Manning, or in proof of an estoppel. The proof that Manning was the assignee of the rents sued for explains why he should have employed counsel in the case, and very effectually rebuts any presumption of agency which might otherwise have attached from his acts in connection with it. But even if an agency in that particular case was established, it would not be legally sufficient to establish an agency in the present one without further proof, and there is no offer or pretence that any further, or other proof would be given. How this record would establish an estoppel upon Twilley does not appear. We think, therefore, the evidence in this exception, was also properly rejected. The evidence in the next exception was offered to support the first plea, which alleges that the money was brought into Court by the sheriff, and "duly distributed and applied under the order and direction of the Court." The proof offered does not support the plea. It is stated in the exception "that the action of the Court was, and was intended to be entirely unofficial, and only accorded as advice, which they were assured would be sat-

isfactory to all the judgment creditors.'' The proof offered therefore, if admitted by the Court, would have established the fact, that there never was any order or direction of the Court, duly passed, making distribution and application of the fund. It negatives the truth of the plea, and its rejection could not by possibility have injured the defendants.

This brings us to the consideration of the prayers in the case. From what has already been said it is apparent that no valid, legal objection has been interposed to the right of the plaintiff to recover. The Court, therefore, upon his prayer, properly instructed the jury, that if they believe the facts set forth in the declaration, they must find for the plaintiff. The direction given by the Court, as to the amount of damages to be assessed by them, has not been objected to, and is undoubtedly right.

The three prayers offered by the defendants, present the question of waiver in different aspects. They could not have been granted, because there was no evidence to support them. Upon the proof in the record, it is not urged that they should have been granted ; for the only ground taken in the argument to support them is, that ''if the evidence set forth in the exceptions had been admitted, the instructions asked for by the appellants correctly stated the law of the case.'' This evidence we have ruled was properly rejected, and it is unnecessary to say whether the prayers should have been granted, even if the evidence had been permitted to go to the jury.

*Judgment affirmed.*

(Decided 12th February, 1875.)