CHARLES SHIPLEY, and IDA R. SHIPLEY *vs.* MOSES FOX.

*Indemnity mortgage — Estoppel — Judgment inquired into Collaterally — Purchase of Mortgaged property — Certified copies as Evidence — Sec. 58 of Art. 37, of the Code — Docket entries — Declarations.*

Where one who holds a mortgage to indemnify and save him harmless as security on a bond to dissolve an attachment against the mortgagor, and who has had other claims against the latter, which have been paid, states that the mortgagor has paid him in full except a small debt particularly mentioned, but his attention at the time is not called to the pendency of negotiations for the purchase of the mortgaged property or to the attachment proceedings in which verdict had been rendered, but no judgment entered; and he afterwards pays the judgment when entered, he is not estopped, as against the purchasers, from enforcing his claim under the mortgage of indemnity.

Where a mortgage is given to indemnify the mortgagees against an attachment issued by one who subsequently takes a mortgage on the same property, and the female mortgagee, the wife of the other mortgagee, purchases the equity of redemption, the correctness of the judgment in the attachment suit, although repudiated by the defendant therein, the mortgagor, cannot be inquired into in a proceeding to foreclose the second mortgage, the judgment having been paid by the mortgagor.

Where one who holds a first mortgage of indemnity against a judgment, purchases the property, and as part of the consideration therefor assumes the judgment, he is not entitled to an allowance for it on foreclosure of a second mortgage, the mortgagor testifying that the judgment had been paid with his money, and the first mortgagee remaining silent and giving no testimony.

A bond to dissolve an attachment being provided for by law, and becoming a part of the record, a copy of it as such part of the record is admissible evidence under section 58, of Article 37, of the Code, making certified copies of records evidence.

The docket entries of a case required by law to be kept by the clerk, showing there is a judgment, are admissible in evidence in connection with a copy of the judgment.

Declarations of the mortgagor and others that the mortgage has been paid, are inadmissible to affect the assignee.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below (DENNIS, J.,) cancelling the mortgage mentioned in the proceedings in the cause, from Caleb C. Merritt and wife, to F. Waters Hall and Ottoman Brehme, executors and trustees under the will of Thomas I. Hall, declaring the assignment of said mortgage to the appellant Ida R. Shipley, null and void, and directing the payment by the appellants to the appellee of the sum of $3312.72 being the amount he paid to Andrew Saks, plaintiff in the attachment suit, for said Merritt, and in default of such payment, that the mortgaged property be sold. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Thomas G. Hayes,* for the appellants.

*Hamilton C. Cromwell,* and *Samuel J. Harman,* for the appellee.

IRVING, J., delivered the opinion of the Court.

On the 15th of June, 1885, Caleb C. Merritt executed to Moses Fox, the appellee, a mortgage upon certain property to indemnify and save him harmless from all loss and damage that might befall the mortgagee by reason of his entering security for the mortgagor in a bond to dissolve a certain attachment proceeding in the

Superior Court of Baltimore City against Merritt at the suit of one Andrew Saks. Judgment was obtained against Merritt, the mortgagor, in the attachment suit, and the mortgagee, Moses Fox, was compelled to pay, and did pay, on account thereof the sum of thirty-three hundred and twelve dollars, and seventy-two cents, ($3312.72) and filed his bill upon the mortgage of indemnity, to obtain a sale of the mortgaged property, for his reimbursement. From the decree of the Circuit Court of the City of Baltimore directing the payment to Fox of this sum, which he paid for Merritt in the attachment suit, and, in default of such payment, directing the sale of the property mortgaged, this appeal was taken. At the time of the execution of this mortgage to Fox there were two prior mortgages from Merritt, resting on the same property. One of these mortgages was in favor of Hall and Brehme, dated 2nd of May, 1884, to secure a loan of $2000 ; and the other was dated August 22, 1884, and was executed to Charles Shipley and wife, administrators of Joseph Merritt, indemnifying them against a certain attachment of Moses Fox against Caleb C. Merritt, and a judgment of one Andrew Hoffman against Caleb C. Merritt.

On the 28th of September, 1885, Caleb C. Merritt and wife conveyed to Ida Shipley, wife of Charles Shipley, all his (Caleb C. Merritt's) real estate including the portion thereof covered by the mortgages above recited, and they being made defendants in the suit of Moses Fox for the foreclosure of his mortgage of indemnity, have appealed from the decree in favor of the appellee. All these conveyances the bill set out.

The appellants had set up in defence an assignment of the Hall and Brehme mortgage to them, dated the 28th of September, 1885, and this mortgage the decree had declared cancelled and paid. They had also set up a claim for money paid by them on the Hoffman

judgment against Merritt, for the payment of which the Court in its decree made no provision. They also contended that Fox was estopped from setting up his indemnity mortgage; and, that if he was not estopped, they were entitled to a large credit thereon.

The same contentions are pressed in this Court as grounds of error, and we will consider them *seriatim.*

1. Proceedings having been instituted for foreclosure under the Hall and Brehme mortgage, and decree for sale obtained, Merritt and his counsel applied to the appellants to assume its payment until certain property of the mortgagor, Merritt, could be sold. Negotiations were then pending for the sale of certain property on Paca street, wherein Merritt had one-fourth interest, his uncle owning one-half, and his sister, Mrs. Shipley, the other fourth. Shipley agreed to make such advances as were necessary to stop the sale under decree of Hall and Brehme for foreclosure, and was to be reimbursed out of the sale of the Paca street property as far as it would go; and to protect him in so doing, he was to have an assignment of the Hall and Brehme note. This was the understanding entered into by Merritt and his counsel with Shipley and his counsel. Accordingly on the 24th of August, 1885, Shipley gave his check for $274.30 to D. S. Briscoe, attorney of Hall and Brehme, the amount needed to pay costs, &c., and secure a stoppage of the sale under the foreclosure decree. In a few days thereafter, viz., on the first day of September, 1885, the negotiation for the sale of the Paca street property was concluded, and the same was conveyed to Griffith and Turner, who paid Shipley not only his wife's share of the purchase money, but also Merritt's share thereof, which, according to the proof, was to be $2000; Merritt, having assented to the sale on the condition he was to have $2000 clear. On the third of September, 1885, Shipley paid D. S. Briscoe,

attorney of Hall and Brehme, $2003.00, the amount of their claim; and on the same day Briscoe filed an order of satisfaction, of the claim and decree, on the Court record of it; but the same was not in statutory form, which requires the same to be executed by the mortgagor, and in a certain way. Merritt's interest in the Paca street property received by Shipley did not pay the Hall and Brehme mortgage, including costs, by $277.30, if Merritt was to receive $2000.00 net for his interest, as we think he was; and according to appellants' contention it failed to pay by $332.23, allowing him only $1945.07 for his share of the Paca street property. Whichever was the true amount of deficiency, we think it clear that it was fully paid in some subsequent transaction between the parties.

On the day of the final payment by Shipley of the Hall and Brehme mortgage, viz., on the 3rd of September, 1885, Merritt gave Shipley his due bill for $374.44. Merritt testifies that this due bill was for previous advances on account of the Hall and Brehme mortgage, and nobody testifies to the contrary. Still the appellants contend it was not given for those advances, but for something else, and they rely upon the fact, that the due bill is for a different amount from that actually paid Mr. Briscoe on the 24th of August, preceding the final payment of that claim which was $274.30. If it did not include the payment of costs, commissions, &c. to Bricoe, Mr. Shipley could easily have so testified, which he did not do. His failure to do so creates a strong presumption in favor of the verity of Merritt's testimony. Without doubt, the due bill does include something else besides the first advances paid Briscoe to stop the sale; precisely what that was we do not know; but it was both reasonable and natural, that all the then outstanding indebtedness of Merritt should be included, and Barnes testi-

Shipley *vs.* Fox.

fies that Shipley was reluctant to make this advance, because some prior advances had not been repaid him by Mr. Merritt, when this loan was requested. Barnes, in his testimony sustains Merritt, for he says a due bill was given, he thought, for about $375, or thereabouts. The *time* when the due bill was given supplies a strong presumption that it included the advances about the negotiation and business then finally concluded. It is not likely that, on the very day when this business was finally fixed, advances over and above receipts from the Paca street property sale would be forgotten; and only advances at other times, and for other purposes would be closed by note, omitting the later advances. Taken in connection with the testimony of Merritt and Barnes, we cannot have the slightest doubt that this due bill did include the payment first made to Mr. Briscoe. The possession of the due bill, and its production by Merritt, is evidence of its payment, independent of his testimony about it. How it was paid, whether in a subsequent sale of property to Mrs. Shipley or otherwise, is wholly immaterial. We think the Court below was fully justified in finding all indebtedness of Merritt on account of the Hall and Brehme mortgage was fully paid, and with Merritt's money. The contention that, notwithstanding this Hall and Brehme mortgage, which has been fully paid by Merritt's money, can be still held under the assignment to Mrs. Shipley, in protection of her title acquired on the 28th of September, 1885, as against the mortgage of Fox which was given on the 15th of June preceding her purchase, cannot be maintained. It is not a case for the application of the principle decided in *Forbes vs. Moffatt*, 18 *Ves.*, 384, which was approved by this Court in *Polk vs. Reynolds*, 31 *Md.*, 111. Those cases only decide that where a person becomes the donee of an estate subject to a charge for his benefit

a merger will not be effected, if the intention be manifested to keep it alive. In this case when the original advance was made or agreed upon to stay the proceedings on Hall and Brehme's decree, as a protection *in making that advance* or any other advance on the same account, Merritt did agree that the Hall and Brehme bond was to be assigned to Shipley. At that time no purchase by Shipley's wife of the remainder of Merritt's property was contemplated. Merritt and his co-owners were then in treaty for the sale of the Paca street property. Griffith and Turner bought it; and Merritt's interest therein was paid over to Shipley who paid it to Briscoe, attorney for Hall and Brehme. To that extent Shipley was the mere agent of Merritt for the payment of Hall and Brehme. He paid two thousand three dollars to Briscoe; three dollars more than Merritt's interest in the Paca street property, which was paid by Griffith and Turner to Shipley for Merritt. This three dollars and the $274.30 first paid to Briscoe, would be protected by the assignment; but no more. The Hall and Brehme mortgage was paid on 3rd September, 1885. The assignment of the same to Shipley was not made until 28th of October, 1885—nearly two months after it was paid off; but supposing there was an equitable transfer of it by the delivery of the bond for the amount it secured by Merritt to whom it was delivered when paid, all that it would secure was fully paid to Shipley, and that would discharge it. To hold otherwise would be allowing a fraud to be wrought on Fox. His mortgage was of record, and *preceded* Mrs. Shipley's purchase of the final equity of redemption. Fox had the equity of redemption in advance of her, and to allow her to hold an assignment of the mortgage from Merritt to Hall and Brehme prior to Fox's, to the exclusion of Fox, when the Hall and Brehme mortgage had been fully

paid, (not with Mrs. Shipley's money, but with Merritt's money in the first instance, afterwards refunded to Mrs. Shipley,) would be allowing that which none of the cases cited by the appellants' solicitor will sanction. This decision does not infringe upon any of the cases cited by the appellants' solicitor, but is in entire harmony with them. Its facts take it entirely out of the operation of the rules they lay down.

2. The next question for consideration is, has Fox, by any conduct of his, estopped himself from prosecuting his suit as against the appellants? We are all of opinion that he has not. The doctrine of estoppel "stands on the broad ground of public policy and good faith." "It is interposed to guard against fraud and prevent injustice." It refuses to a party the right to deny his admissions when they have been acted upon by persons whom they were designed to influence. To make the estoppel effectual it must also appear that the party made the statements relied on with a full knowledge of all the facts affecting his own rights. *Alexander vs. Walter*, 8 *Gill*, 240; *Stallings vs. Ruby's Lessee*, 27 *Md.*, 149; *Johnson vs. Frisbie*, 29 *Md.*, 76; *Reynolds vs. Mutual Fire Ins. Co. of Cecil County*, 34 *Md.*, 280; *Homer vs. Grosholz and Coquentin*, 38 *Md.*, 520; *Bramble, et al. vs. State, use of Twilley*, 41 *Md.*, 435. These authorities make it clear, that Fox has said or done nothing which ought to work an estoppel upon him. His indemnity mortgage was on record, and was notice to everybody. Whether Shipley had actual knowledge of it we do not certainly know, for he has abstained from testifying upon any branch of the case. The records of the Court also disclose the pendency of the suit recited in Fox's mortgage, which might culminate in Fox being forced to pay the judgment obtained, and which the indemnity mortgage was designed to protect against. The records also showed that

Fox at one time had a judgment against Merritt, and appellants' mortgage to them as administrators secured against that, and the judgment against Merritt in favor of Hoffman before a justice of the peace.  In buying Merritt's land they were affected with knowledge of all these claims, and knew they took subject to them. Merritt said he had paid Fox.  Barnes was asked, and said he only knew what Merritt said about it, but said he would ask Fox how he and Merritt stood.   According to promise he saw Fox and asked him, and Fox said he had been paid by Merritt and was free from him, except a mortgage for $430 on property in Baltimore County.  Barnes did not tell Fox why he asked, or any thing of the treaty going on for the purchase by the appellants of Merritt's property.  He says expressly that his conversation with Fox was confined to his question and Mr. Fox's answers.  Fox was not put on his guard at all, and can not be held to have made any statement with a view to influencing the appellants in their purchase.   In fact Fox *had been paid* the judgment he held individually against Merritt; and at that time he had no claim against Merritt under his indemnity mortgage.   Verdict had been rendered in the suit against Merritt, but there was no judgment, and Fox had not been called on to pay any thing on account of it.   Merritt had property from which the judgment could be made when rendered; and his attention at the time was not called to that matter so as to feel his liability as then existing.  He afterwards, and after judgment rendered, did pay the same; and not until then did he have any claim against Merritt because of it.   The claim had only a contingent existence when he was talking to Barnes, and his attention was not called to his possible liability.   Being entirely ignorant of appellants' negotiations with Merritt for the purchase of his property, and of any object Barnes had in asking

the question he did, there is no ground on which to rest a suspicion even of design to influence anybody's conduct. There is therefore no evidence of bad faith on the part of Fox. There was want of due precaution on the part of the appellants; but Fox cannot be charged with the consequences of their own negligence. But it is further argued that if Fox is not wholly estopped from pressing his claim under his indemnity mortgage, the same must be abated to the full extent of the judgment he had against Merritt, and against which their indemnity mortgage made provision. That judgment Merritt paid long ago. Whatever objections he may have had to the justice of that claim against him he not only waived by submitting to judgment, but finally shut his own mouth by paying it in full. It does not matter that he still repudiates its correctness; and there is not the slightest propriety in opening the matter *collaterally* to give somebody else the benefit of abatement on account of it, if the evidence would seem to warrant it on the complaint of Merritt, which it does not.

3. The Hoffman judgment the appellants contend has been admitted in the bill as a subsisting claim in priority of Fox. We do not so understand the bill or its effect. In the appellants' indemnity mortgage they were secured against the Fox judgment, and this Hoffman judgment against Merritt, in order that they might settle and finally distribute the estate in which Merritt had an interest. The appellee knew he had been paid his judgment, and that no liability existed under that mortgage because of it, and therefore he so averred, and added the statement that no liability under it could exist except for the Hoffman judgment. He knew nothing of it, and could do no more than charge, as he did, that it might be made a subject of investigation. He does not admit that there is any

thing due on account of it, but if there is any thing due he asks provision for it, and concedes in that case its priority over him. This is the full effect of the allegations of the bill; and whether provision must be made for that judgment in favor of the appellants depends on the proof. We think it is reasonably certain that appellants are entitled to no allowance because of it. Merritt testifies that this judgment was paid with his money by one Capt. Grant, but that finding it had not been entered of record as paid, he had Shipley assume it in his purchase as part of the consideration of the property bought and conveyed to Mrs. Shipley. If that be so, it is clear, that no proper claim can be now made by the appellants, on account of it. If it were not so, Shipley could easily have testified in contradiction of the statement, and in support of the intention to keep that mortgage alive for his protection. This he does not do. His silence is strongly confirmatory of Merritt's statements about it. It is most unreasonable to suppose that in paying for property that such a claim as this would be left unsettled or unprovided for in some way. To pay the whole consideration, and leave this judgment resting on the property, would only indicate that it was understood that the property was worth what was paid and the judgment also; and that this was what was agreed on as its price. Mr. Merritt testifies that he does not owe Mr. Shipley *one cent*. If he does not then he does not owe this judgment, and Shipley has most significantly omitted to deny a word that he says. It is not pretended that they did not know of this judgment as they knew of the Balto. Co. mortgage of Fox. It is conclusively proven that Merritt was to have from his sister $3800.00 clear of taxes, &c., for the property conveyed to her. His letter to Mrs. Shipley saying if she would give him that much clear he would accept her proposi-

tion, was filed as evidence by the appellants. He testifies she did so agree, and there is no proof to the contrary. He admits he was paid but does not state what was deducted from that afterwards or paid with it. If what Mr. Hayes paid him when the deeds were executed was all the cash he received, it is evident something was first deducted, for Mr. Hayes testifies to only paying $3367.00. Precisely how every thing was fixed, the proof does not make clear. But it is certain there was a settlement, and the strong preponderance of proof leaves no doubt on our minds that the Shipleys left no demand against Merritt outstanding.

The Judge of the Circuit Court concluded his opinion by saying he was unable to find anything was due Shipley from Merritt, but said he would allow the auditor to take further testimony on the subject; but in his decree he reserved no such right. He decreed Fox's claim should be paid, and in default that the mortgaged premises be sold, and this is relied on as a ground of error. The opinion was filed the 19th of April, 1888, and the decree was filed the second day of May succeeding. Subsequent reflection no doubt convinced the Judge that there was really nothing due to the appellants, and that there was no propriety in allowing further proof on the subject. In that conclusion we think he was right.

The exceptions of the appellants to the testimony were not formally passed on by the Circuit Court, so far as the record discloses, and we need say but little respecting them. The last exception, respecting the declarations of Merritt and others, as given by Mr. Harman, is sustained, and the statements excepted to have been disregarded. The other exceptions are untenable. The bond to dissolve the attachment was provided for by law, and became a part of the record, so that a copy of it as such part of the record was clearly

admissible evidence under the provisions of the Code. Art. 37, sec. 58. And the docket entries of the case which accompanied it, were entries by law required to be kept by the clerk, showing there was a judgment, a copy of which was also offered as exhibit No. 4, could not be excluded when taken in connection therewith. The decree will be affirmed.

*Decree affirmed.*

(Decided 14th December, 1888.)