CHERRY ET UX. *v.* SIEGERT ET VIR.

[No. 70, September Term, 1957.]

*Decided December 17, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thomas J. Curley* for the appellants.

*George B. Woelfel* for the appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Anne Arundel County (Macgill, J.), declaring that Iva E. Siegert and Oscar Lynn Siegert, her husband, (the Siegerts),

are seized and possessed of a good and merchantable fee simple title in and to a parcel of land situate in the Seventh Election District of Anne Arundel County, containing two acres, three roods and six perches of land, which Fritz J. Witt, (the deceased), and his wife acquired by deed from Thomas E. Atwell, dated January 14, 1925, saving and excepting therefrom two smaller parcels which were subsequently conveyed to others.

On June 27, 1952, Robert Witt and other heirs of the deceased, as complainants, filed a bill for the sale of the real estate of which the deceased had died seized and possessed in lieu of partition in kind, against all unknown heirs of the deceased and two mortgagees, as respondents, being No. 10,511 Equity (the partition proceeding). The unknown heirs were duly notified by order of publication. Presumably the mortgagees were duly summoned and answered. A decree *pro confesso* was obtained against the unknown heirs, and testimony was taken pursuant thereto. During the taking of the testimony one of the witnesses named all of the heirs of the deceased who had been published against as unknown, but no effort was made to file a supplemental pleading, or otherwise amend the partition proceeding, on the assumption that the newly discovered heirs were bound by the order of publication. In due course a decree for sale was passed. Trustees were appointed and after due notice of the sale, the property was sold to Iva E. Siegert. After the payment of the court costs and the two mortgages there were insufficient funds to pay the funeral bill of the deceased's wife and there was never any money for distribution among the heirs of the deceased.

The Siegerts, after acquiring title to the property offered it for sale and secured a prospective purchaser therefor, but he was advised by counsel or the title examiner that the title was defective because some of the interested parties to the partition proceeding were not properly notified. In an effort to cure the alleged title defect, the Siegerts, on December 3, 1953, filed a bill to quiet title against Iva Witt Ward and others, all of whom were heirs of the deceased, being No. 11,224 Equity (the bill *quia timet* or bill to quiet title). All

parties defendant were either properly summoned or notified by order of publication. Of the twenty defendants, nineteen failed to answer, and a decree. *pro confesso* was passed against them. The other defendant, Orion Larson, (the incompetent), the only person under disability, answered by a duly appointed guardian *ad litem*. In due course testimony was taken and the court (Michaelson, J.) on May 13, 1955, passed a decree quieting the title to the property in question and removing the cloud thereon—

> "* * * so that * * * Iva E. Siegert * * * shall * * * hold said land and the title thereof free, clear and discharged of the claim or claims of any of the parties to this proceeding or by anyone claiming by, from or under them, as fully and effectually as though the * * * parties in this proceeding had been named and summoned in the original bill for the sale of the aforesaid realty in No. 10,511 Equity * * *."

On August 1, 1956, the Siegerts, by a duly executed agreement of sale, sold the property to Leon Wilson Cherry and Nellie Jane Cherry, his wife, (the Cherrys), wherein they agreed to "convey the property by a good and merchantable title." Upon an application for a mortgage loan, the Cherrys were advised that title to the property was still defective. The Cherrys declined to consummate the agreement of sale, and the Siegerts filed the bill for a declaratory decree which is the subject of this appeal.

When the partition proceeding was filed the incompetent, one of the heirs of the deceased, was an inmate of Spring Grove State Hospital. He was not then and has never been adjudicated to be an incompetent by either a jury or a court. In the partition proceeding he was made a party plaintiff without being identified as *non compos mentis*. He did not sue by a next friend and no guardian *ad litem* was appointed for him in that proceeding. In the bill *quia timet* the incompetent was made a party defendant and was duly summoned by personal service, and by leaving a copy of the writ with the superintendent of the hospital in which he was confined.

In that proceeding a guardian *ad litem* was duly appointed for him, and the guardian filed the usual answer on his behalf.

In effect the chancellor by his decree declared that the bill to quiet title cured the defects in the partition proceeding so that the Siegerts are in fact seized and possessed of a good and merchantable title to the property in question. We agree.

Assuming, without deciding, as did the parties and the chancellor, that the defects in the partition proceeding were fatal, the only question for us to decide is whether the bill to quiet title was a proper proceeding to cure the defects in the partition proceeding.

The Cherrys question the effectiveness of a decree in a bill *quia timet* to quiet title against the heirs who were not specifically named in the preceding partition proceeding so as to dispose of their interests in the property sold for partition. Ordinarily, defects in a proceeding should be cured by a supplemental pleading before final decree or by a supplemental bill after such final decree. But we believe that there is no merit to the contention of the Cherrys that the bill *quia timet* was not a proper proceeding to cure the defects in the partition proceeding. One office of a supplemental bill is to cure irregularities or defects discovered in an original bill, and we see no reason why a bill *quia timet* should not be used for that purpose when the irregularities or defects concern the sale of real property. Although the limits of the application of the remedy afforded by a bill *quia timet* are not clearly defined, it rests on the broad principle of relieving a party and his title from some claim or liability which may, if enforced, entail serious loss. *Bouvier* (Baldwin's Ed., 1934), p. 127. It is quite possible that if Code Supp. (1957), Art. 16, sec. 131A (Quieting Title), had been in effect when the bill to quiet title was filed, there would not have been any doubt of the efficacy of such a bill to cure the defects in the partition proceeding. We see no reason why there should be any doubt even in the absence of such statute since it appears to be for the most part merely declaratory of the law as it existed prior to June 1, 1955. We believe that actions to quiet title should not be hampered by needless anomalies, and that the market-

ability of a title should be encouraged and protected whenever it is possible under the law. In *Homewood Realty v. Safe Deposit & Trust Co.* (1931), 160 Md. 457, 154 A. 58, this Court reviewed fully its prior decisions and other authorities with respect to bills *quia timet*. For our purpose here it will suffice to quote a brief part of the opinion in that case:

> "The principle upon which chancery acts in such cases is that the value of property in land lies in its marketable title and the right to its quiet possession, and that sometimes justice requires that the owner should not have its worth materially depreciated by the chilling effect, for an indefinite time, of an invalid, although not actively asserted, claim, which, if enforceable, would cause him a loss; and so, he is entitled to have the questions affecting his rights forthwith determined by having the claim immediately established and enforced or his estate made secure against its operation. In this way bills *quia timet* anticipate and guard against future and contingent injuries and assure the estate of the owner."

In the *Homewood Realty* case, as in this case, no adverse claim had been made *until* a prospective buyer discovered what he surmised was a defect in the title to the property he had agreed to purchase. Therefore we think that the contentions of the Cherrys (i) that an owner of real property may not resort to a bill to quiet title until his title is threatened by invalid and unfounded claims against which he had no adequate remedy at law, and (ii) that the claim of the Siegerts was neither adverse nor unfounded but clearly legal, are not valid. On the contrary, we believe that when the Siegerts alleged in effect that the competing claims of some of the heirs of the deceased, including the incompetent, were adversely affecting their rights, they thereby showed the existence of a threatened cloud on their title and brought their case within the full scope of the remedy afforded by a bill *quia timet*.

We reiterate that the bill to quiet title cured the latent defects in the partition proceeding so that the Siegerts are in fact

seized and possessed of a good and marketable title to the property in question.

*Decree affirmed, the appellees*
*to pay the costs.*