527 A.2d 821

**PERUZZI BROTHERS, INC.**

v.

**George H. CONTEE, Jr., et ux.**

**No. 1469, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 10, 1987.

Henry F. Leonnig, Upper Marlboro, for appellant.

Jack G. Upton (Stephen L. Clagett, on the brief), Prince Frederick, for appellees.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

POLLITT, Judge.

Appellees, George H. Contee, Jr., and his wife, sued appellant, Peruzzi Brothers, Inc., in the Circuit Court for Calvert County. The appellees sought an injunction prohibiting appellant from entering on appellees' property, an order quieting title to the property, and general relief. After trial without a jury, Judge Perry G. Bowen, Jr.,

ORDERED that Pearl H. Morsell and her successors in title [appellant] are permanently estopped from claiming any ownership interest in .93 acres as shown on the attached plat and which was intended to be conveyed in whole to the Plaintiffs herein by Milton Gordon, et al. in 1965.

From that order, Peruzzi Brothers, Inc., appeals. We shall affirm, with slight modification, the order of the Circuit Court for Calvert County.

The facts of the case are virtually undisputed. In July of 1965 one Milton Gordon and others were the owners of a tract of land on Horace Ward Road in Calvert County. Mr. Gordon, who managed the property for himself and the other owners, approached Mr. Contee about selling the Contees a small house on the property with supporting lot. Both Gordon and Contee intended the conveyance to be approximately one acre. On July 12, 1965, Gordon requested J.R. McCrone, Jr., Inc., professional surveyors, to prepare a plat of approximately one acre. In August, the surveyors prepared a plat and metes and bounds description showing .93 of an acre. For some reason now unknown to anyone, a plat and description showing 0.344 acres were prepared at the same time. Despite the expressed intentions of both sellers and buyers to convey approximately one acre, a deed was executed and recorded in October of

1965, conveying from Gordon et al. to the Contees a tract described by metes and bounds and containing 0.344 acres, more or less. The description in the deed followed the description of the plat of 0.344 acres, but the plat was not specifically referenced in the deed and, apparently, was not recorded. Pipes were set in the ground showing the boundaries of the .93 acre site.

When Contee saw the deed, he told Gordon, "I need one acre more or less for my septic tank and my dry well." Gordon replied, "Okay. I will have McCrone come back. I will have McCrone come back and put some pipes in it." Although he never received another deed, Contee believed the presence of the pipes identified the boundary of his property.

As Judge Bowen found:

Now, as the years pass, Contee used the property, cleaned it up to the stakes. The evidence shows he filled it with fill dirt, established a parking lot on it, septic tank and leaching well on it when he put plumbing in his house and a well when he put water in his house. Now, all of these uses are pretty high visibility uses. Difficult to drive down the road and not see a man's parking lot, picnic table, people out there drilling wells—and from the testimony this is a drilled well. And although it isn't so obvious once that thing is in where it is, it is pretty obvious when the well drilling is going on.

All of these uses are consistent with a claim of ownership of the land and inconsistent in the extreme with somebody else's ownership of the land. If you think you own a piece of land, I think the least likely thing that you are apt to let somebody else do is establish a sewage disposal system on it. There may be other things that would be a little more apt to arouse the interest of the true owner than that, but right offhand, I can't think of one.

About two years later, in October of 1967, Gordon et al. sold the adjoining parcel to Pearl H. Morsell et al., appel-

lant's predecessors in title. That deed, without metes and bounds description, described the property conveyed as bounded by the land of appellees and containing one acre, more or less. In 1983, appellant entered into a contract to purchase this property. Upon discovery of the discrepancy in the boundary, and without any discussion with the Contees, Peruzzi employed a surveyor to survey the area outside the Contees' deed description, which disclosed an area of 1.39638 acres. Peruzzi then obtained a confirmatory deed from Gordon, which included approximately .59 acre of the land intended to have been conveyed to Contee. Gordon was told the confirmatory deed was necessary to clarify the boundaries, but was not told that any dispute existed.

After purchasing the 1.39638 acres, Peruzzi began site work preparatory to construction on its lot. Contee's first notice of any problems was when the earth moving machinery commenced work on what he had thought was a part of his property. These proceedings followed.

The trial court found that Gordon intended to sell and Contee intended to buy approximately one acre; that the deed between them was based on a mutual mistake of fact; that Contee used the property by "high visibility uses" obviously apparent to the adjoining owners for nearly twenty years, with no protest from those owners; and that appellant purchased the adjoining lot with knowledge of those uses. Judge Bowen pointed out:

Now, if we adopt the Defendant's position, we are confirming the fact that Morsell, who bought an acre, more or less, and paid only for that, winds up with an acre and roughly 4/10ths—roughly a third more than she bought and paid for. Whereas Contee, who bought and paid for an acre, more or less, winds up with roughly a third of an acre.

Now, we don't have a situation here where you have a bona fide purchaser for value or any sort of an argument of that sort. The present owner of the Morsell tract bought into the situation with a knowledge that Contees were asserting a claim to this property and were going to

maintain it or attempt to claim it against everybody. He has secured what appears to be good paper legal title to this property. But he has secured it with the knowledge and after seeing that there was a use to which it was being put totally adverse to anything other than the claimed ownership.

The trial judge ruled:

What we say is that Morsell and all persons claiming through and under Morsell are estopped from asserting a claim to this property. They are estopped, as I see it, on the legal principle of estoppel in pais. We have sat by for almost 20 years, watched this man improve the property, place this utility—sources of utility service on it, use it, claim it. And the fact that he did not get legal title to it originates in a mistake. Everybody cannot help but know that.

We think, therefore, that Morsell and her successors in title are estopped from claiming that he no longer has the right to use or possess this property.

Peruzzi appeals, contending that:

1. The trial court erred in admitting testimony from Contee and Gordon as to their intent, in contradiction of the written deed between them.

2. The trial court erred in applying equitable estoppel in favor of the appellees against the appellant.

3. The trial court erred in failing to grant the appellant's Motion to Dismiss.

## I

Appellant first asserts the court erred in permitting the parties to establish their intentions by parol evidence.

Preliminarily, we note that Judge Bowen found the appellant was not a bona fide purchaser without notice of appellees' claims. Considering the "highly visible uses" of the property by appellees, under claim of right, that finding is not clearly erroneous. Generally, one who is not a bona fide purchaser may not invoke the parol evidence rule.

In *Kolker v. Gorn*, 193 Md. 391, 67 A.2d 258 (1949), in a suit by a judgment creditor against the husband, a wife was permitted to testify that a conveyance of property to a third person, her husband and herself as joint tenants, was actually intended to convey a half interest to her husband and herself as tenants by the entireties. After finding that a judgment creditor is not a bona fide purchaser, the Court held that a stranger to the transaction, who is not in the position of a bona fide purchaser, cannot invoke the parol evidence rule to prevent a party to the deed from showing a mutual mistake by the parties, in the absence of facts raising an estoppel. Since there was no evidence that the wife, by misrepresentation or otherwise, had induced the creditor to give credit on the assumption that the record showed the true state of the title, the Court found no basis for an estoppel.

We think the same can be said of this case. There is no evidence that either appellees or Gordon misrepresented anything to appellant, or that appellant did anything in reliance on any conduct of appellees, who were not even consulted, despite their obvious use of the property in question. There is no basis for an estoppel prohibiting them from offering the parol evidence.

Even if the appellant were in a position to invoke the rule against parol evidence, the trial court's finding of a mutual mistake by the parties, which is not clearly erroneous, permits the introduction of parol evidence to ascertain intent.

In *Ray v. Eurice*, 201 Md. 115, 93 A.2d 272 (1952), the Court said one may not vary a clearly expressed written contract by parol, absent fraud, duress or mutual mistake. In that case, there was no contention of fraud or duress and, the Court said, if there was a mistake, it was unilateral. One party intended the contract to be as clearly written, any misconception being only in the mind of the other party. Judge (later Chief Judge) Hammond, for the Court, held:

An integrated agreement may not be varied by parol where there is no *mutual* mistake, nor may the parties place their own interpretation on its meaning or intended meaning.

201 Md. at 125, 93 A.2d at 278 (emphasis added).

We find nothing to the contrary in any of the cases cited by appellant. *Gilchrist v. Chester,* 307 Md. 422, 514 A.2d 483 (1986), says:

Thus, if the deed in question was clear and unambiguous, in the absence of fraud *and* mistake, there was no need to construe it through the use of extrinsic evidence.

307 Md. at 425, 514 A.2d at 484 (emphasis added).

In *Gilchrist,* there was no allegation of fraud *or* mistake and no evidence thereof. *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 630 (1977), quoted in *Gilchrist,* cites as authority for the passage quoted the case of *Billmyre v. Sacred Heart Hosp.,* 273 Md. 638, 642, 331 A.2d 313, 316 (1975), and cases there cited. In *Billmyre,* 273 Md. at 643, 331 A.2d at 317, the Court quotes from *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958):

"As we turn to the authorities, we may note first that the theory of 'objective law' of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice,* 201 Md. 115, 93 A.2d 272. ' * * * where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective. * * * *Williston* * * * Sec. 94, page 294, says: "It follows that the test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean,

but what a reasonable person in the position of the parties would have thought it meant." ' *Ray v. Eurice, supra,* p. 127 [93 A.2d 272]."

Where the uncontradicted evidence revealed that all parties to the Gordon-Contee deed intended that deed to convey approximately one acre of land, and in fact the deed conveyed only .344 acres, it was not error to allow proof of the parties' intention by parol evidence.

Relying on *Annapolis Mall v. Yogurt Tree,* 299 Md. 244, 473 A.2d 32 (1984), appellant asserted at oral argument that parol evidence of mutual mistake may be admissible in a suit in equity for reformation of a deed but it cannot be used in a suit to quiet title. The Court there did say that mutual mistake is not available as a defense in an action at law, without the written instrument having been first reformed in equity. However, the Court further said:

> Undoubtedly proponents of the merger of law and equity will point to this holding as another marcher in a parade of horribles emanating from the niceties of this state's present system of modified common law pleading.

299 Md. at 246, 473 A.2d at 33.

The Court then points out, in a footnote, that its proposed new Rules, specifically Rule 2–301, may alter the situation. Those new Rules became effective not quite three months later, on July 1, 1984. Rule 2–301 now provides:

> There shall be one form of action known as "civil action."

This Rule abolished pleading distinctions between law and equity, and all claims or defenses, legal or equitable, are now determinable in one action. Niemeyer & Richards, *Maryland Rules Commentary* (1984) p. 124. *See also Taylor v. Taylor,* 306 Md. 290, 297–98, n. 6, 508 A.2d 964, 967–68 (1986). We note further that Rule 2–303 now provides, in pertinent part:

> (c) ... A party may also state as many separate claims or defenses as the party has, regardless of consistency and whether based on legal or equitable grounds.

* * * * * *

(e) All pleadings shall be so construed as to do substantial justice.

Pursuant to existing Rules, and appellees' general prayer for relief in their complaint, any evidence which would have been admissible in what was formerly known as an equitable action for reformation of the deed was admissible in this action. When it is alleged and proven that a mutual mistake occurred in the making of the deed, as was the case here, equity will admit parol evidence to reform the deed. *Hoffman v. Chapman,* 182 Md. 208, 34 A.2d 438 (1943).

Appellant asserts as a further reason to exclude the parol evidence, the rulings of the trial court on motions to dismiss third party complaints. It seems to be saying that the court had previously ruled the intent of the parties was not relevant as a basis for dismissing the third party claims. Relying on *Placido v. Citizens Bank & Tr. Co.,* 38 Md.App. 33, 379 A.2d 773 (1977), appellant says this ruling became the law of the case. First, we find no mention of the intent of the parties in the court's ruling on the motions to dismiss. Second, *Placido* does not hold that a trial judge's rulings become the "law of the case." It says precisely the contrary, that a trial judge at any time may reconsider any prior ruling in the case, whether made by him or another judge. We note also that the propriety of the rulings on the motions has not been raised on appeal and is not before us.

The court did not err in receiving the parol evidence.

## II

### Estoppel

Appellant mounts a broad-based attack on the finding of an equitable estoppel by the trial court. It asserts that if anyone is to be estopped it should be the appellees rather than appellant. Citing a plethora of reported decisions, all save one, *Gilchrist v. Chester, supra,* predating the aforementioned Rules, it suggests equitable estoppel is not available to appellees because (1) there was no wrongful conduct of either Morsell or Peruzzi, relied upon by Contee; (2)

Contee failed to act with reasonable diligence; (3) mere silence by Morsell and Peruzzi cannot constitute an estoppel; (4) appellees are guilty of laches, and (5) estoppel is not an appropriate basis for affirmative relief. It correctly cites cases stating, as general rules, the positions it espouses, *e.g. Alvey v. Alvey*, 220 Md. 571, 155 A.2d 491 (1959) (equitable estoppel will not be applied unless it is shown that the person sought to be estopped has been guilty of some wrongful or unconscientous conduct upon which another relied and was misled to his injury); *Greenwalt v. McCardell*, 178 Md. 132, 12 A.2d 522 (1940) (no estoppel in favor of one making improvements to land when the means of knowledge of the true state of the title is equally available to both parties); *Savonis v. Burke*, 241 Md. 316, 216 A.2d 521 (1966), and *Toney Schloss v. Berenholtz*, 243 Md. 195, 220 A.2d 910 (1966) (one claiming the benefit of estoppel must have acted with reasonable diligence). The cases cited in support of the proposition that mere silence does not constitute an equitable estoppel involved factual situations where the Court found no duty to speak. In *Cityco Realty Co. v. Slaysman*, 160 Md. 357, 153 A. 278 (1931), the improvements did not extend onto the property of the party sought to be estopped. *Klein v. Dove*, 205 Md. 285, 107 A.2d 82 (1954), involved an obstruction of a right-of-way. The Court said, among other things, that the parties seeking the removal of the obstruction were not estopped by their failure to complain earlier, since "mere silence as to rights of record does not create an estoppel." Interwoven with those arguments are assertions that appellees are the ones who should be estopped and that the proper action to have been brought was one seeking reformation of appellees' deed.

Generally, estoppels are said to be of three kinds: (1) by record, (2) by deed, and (3) by matter in pais. The first two are technical estoppels as distinguished from equitable estoppels or estoppels in pais. Technical estoppels are regulated by well-settled rules, but it is difficult to establish rules of universal application to estoppels in pais, depending

as they do on the particular circumstances of the case. 28 Am.Jur.2d *Estoppel and Waiver* § 2 (1966).

Neither appellant nor appellees have cited cases analogous to the facts of this case, and our own research has disclosed none. We believe that actions to quiet title should not be hampered by needless anomalies, and that the marketability of a title should be encouraged and protected whenever it is possible under the law. *Cherry v. Siegert*, 215 Md. 81, 136 A.2d 754 (1957). The doctrine of estoppel stands on the broad ground of public policy and good faith. It is interposed to guard against fraud and prevent injustice. *Shipley v. Fox*, 69 Md. 572, 16 A. 275 (1888). Whether the action brought is styled an action to quiet title or an action to reform a deed, under the modern Maryland Rules of Procedure, the result should be the same.

From our previous discussion regarding mutual mistake, we would have no hesitancy in reforming the deed. It is well settled that a court of equity will reform a written deed to make it conform to the real intention of the parties, when the evidence clearly shows that a mutual mistake was made in the instrument contrary to their agreement.

> [W]here there is no mistake as to the identity of the property, but merely an incorrect description, whether in conveying too much property or too little, or referring to property entirely different from that intended to be conveyed, the court will correct the description, except as against *bona fide* purchasers for value without notice.

*Hoffman v. Chapman, supra,* 182 Md. at 211, 34 A.2d at 440.

Appellant is not a bona fide purchaser for value without notice. It knew, before purchasing the property, that appellees' boundary markers included part of the land, and that appellees were making use of the land. A purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him. If he neglects to make such inquiry, he will be guilty of bad faith and must suffer from his neglect. That which is sufficient

to excite inquiry is notice of such facts as would lead an ordinarily prudent man to make an examination. *Fertitta v. Bay Shore Dev. Corp.*, 266 Md. 59, 73, 291 A.2d 662, 670 (1972).

■ It is well settled that one who purchases real property, with actual knowledge of prior equities, is not protected as a bona fide purchaser, but such a purchaser takes the property subject to the known equities, which are enforceable against him to the same extent that they are enforceable against the vendor. *Lewis v. Rippons*, 282 Md. 155, 383 A.2d 676 (1978); *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 250 A.2d 69 (1969); *Grayson v. Buffington*, 233 Md. 340, 196 A.2d 893 (1964).

■ When Mr. Victor Peruzzi, owner and president of appellant corporation, first saw the property in question he saw the Contees' driveway and parking lot, picnic tables and other indications of use of the property. Mrs. Morsell told him there were some questions about the boundary. He saw the pipes in the ground and even visited the surveyors to inquire as to their meaning. Before he purchased the Morsell property he knew the Contees claimed ownership of the parcel in question. Instead of discussing the matter with Mr. Contee, he obtained a confirmatory deed from the elderly Mr. Gordon without ever telling Gordon that there may be problems regarding Contee. This is not the conduct of the ordinarily prudent purchaser in good faith.

As to the question of laches, the trial judge said: and why didn't Contee do something about that at that time? The answer is that here you have a couple raised in the country. They don't rely so much on what they can read or put in a strongbox as what they see and can stand on. He could see the land, he could see his boundary line pipes, he could see the fact that he was using it and that nobody had asserted any claim to it. And he knew that he had honestly bought it from the man, and the man had honestly agreed to fix it for him and had

sent pipes to be put there and some piece of paper that some bank requires to be prepared so that they can lend him money on it which, as he put it and which is right, the purpose of that was to show where his house was located. He didn't have a survey made to determine where his boundary was. He knew where his boundary was just like Gordon and other countrymen didn't go out there and look and say, "Show me where this deed calls for to Contee's line." He knew where Contee's line was. He didn't need to go look.

In *Travelers v. Nationwide*, 244 Md. 401, 414, 224 A.2d 285, 293 (1966), Judge Oppenheimer said, for the Court:

We have repeatedly stated that whether or not an estoppel exists is a question of fact to be determined in each case. *Gould v. Transamerican Associates*, [224 Md. 285,] 297, [167 A.2d 905, 910 (1961)]; *Liberty Mut. Ins. Co. v. American Auto. Ins. Co.*, 220 Md. 497, 501, 154 A.2d 826 (1959); and cases therein cited. Wrongful or unconscientious conduct on which the other party relies, to his detriment, is generally an element of estoppel in the particular circumstances, see *Liberty Mut. Ins. Co. v. American Auto. Ins. Co.*, 220 Md. at 500 [154 A.2d 826], but an estoppel may arise even when there is no intent to mislead, if the acts of one party cause a prejudicial change in the conduct of the other. *Harrison v. McCarty*, 178 Md. 377, 13 A.2d 544 (1940); *Benson v. Borden* [174 Md. 202, 198 A. 419 (1938)], *supra*. The rationale of the doctrine of equitable estoppel was given by Judge Prescott (later Chief Judge), for the Court, in *Johnson Lumber Co. v. Magruder*, 218 Md. 440, 447–48, 147 A.2d 208 (1958), as follows:

"The whole doctrine of equitable estoppel is a creature of equity and governed by equitable principles. It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the conduct of a party, including his spoken and written words, his positive acts and his silence or negative

omission to do anything, rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced."

From the evidence in this case, the trial judge determined as a matter of fact that an estoppel existed. We agree with that finding.

As stated by Judge Singley, for the Court, in *Mascaro v. Snelling and Snelling*, 250 Md. 215, 235, 243 A.2d 1, 13 (1968), quoting Judge Learned Hand in *Dwinell-Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir.1943): "Here, as often, equity does not seek for general principles, but weighs the opposed interests in the scales of conscience and fair dealing." If the purposes of the doctrine of equitable estoppel are to guard against and prevent injustice, the facts of this case cry out for the application of that doctrine.

Since Pearl H. Morsell was not a party to the case, the Order appealed from must be modified by striking the reference to her. In all other respects, the Order will be affirmed.

ORDER MODIFIED AS STATED. AS MODIFIED, AF-FIRMED, APPELLANT TO PAY COSTS.