## PUMPHREY ET AL. *v.* KEHOE ET AL.

[No. 374, September Term, 1970.]

*Decided April 13, 1971.*

The cause was submitted on briefs to BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

Submitted by *William E. Brooke* for appellants.

Submitted by *John C. Keating* for appellees.

BARNES, J., delivered the opinion of the Court.

The question in this appeal is whether or not certain parol evidence was admissible to establish an alleged express assumption by three of the appellees, Holly Hill Associates, a limited partnership and Robert F. Koch and Daniel J. Kehoe, the limited partners, as purchasers of land under a written contract, dated July, 1964, with the owner, Daniel Tessitore, of an alleged obligation by Mr. Tessitore to pay an additional $6,600.00 to the appellants, Carolyn E. Pumphrey et al., sellers of the land to Mr. Tessitore, under a written contract of January 7, 1963, in the event the land was rezoned to the R-18 (Low Density, Multi-Family Residential) zone.

Most of the facts are not in dispute. Prior to January 7, 1963, the appellants and plaintiffs below, Carolyn E. Pumphrey et al., owned the subject property, a 1.26 acre tract, bounded on the north by relocated Maryland Route No. 4, on the east by Pine Street and on the south by

Cross Street in Spaulding District, Prince George's County. The subject property was adjacent to a larger tract owned by Mr. Tessitore, one of the defendants below and one of the appellees in this Court, and George J. Panagoulis. The two tracts were separated by Cross Street.

By a written contract, dated January 7, 1963, Mr. Tessitore agreed to purchase the subject property for $12,600.00 if rezoned to the R-18 zone, but if not rezoned, the purchase price would be $6,000.00. The plaintiff sellers agreed to join in an abandonment of Cross Street. This contract provided that the purchaser Tessitore would apply immediately for the R-18 rezoning upon acceptance of the contract. Settlement was to be made within 120 days from the contract date and was held on October 11, 1963. $6,000.00 was to be held in escrow pending the rezoning and the settlement sheet indicates that this amount was so held in escrow by the Title and Escrow Corporation.

On March 29, 1964, Mr. Tessitore executed a written contract with Holly Hill Associates (Holly Hill) to sell the property to that limited partnership for $20,000.00, "contingent upon the sellers [Mr. Tessitore and his wife, Dashia] obtaining R-18 zoning on the entire property on or before four months from date; settlement under this contract shall be held within sixty days after said zoning change becomes final and irrevocable."

The County Commissioners for Prince George's County, sitting as the District Council, denied the requested rezoning on July 10, 1964. Thereafter, on July 16, 1964, Mr. Tessitore executed a new written contract to sell the subject property to Holly Hill for the "Total price" of $8,500.00, the new contract containing a specific provision, as follows:

> "Sellers agree to convey to purchasers all their right, title and interest in the property, including the right to initiate and prosecute an appeal in conjunction with the application to re-

zone the property to R-18, which application was denied by the Commissioners of Prince Georges County on June 17, 1964.

"Sellers agree to join with the purchasers, if requested by them, in any action necessary to pursue the said appeal."

In the printed portion of this contract of July 16, 1964, was the following provision:

"This contract, made in triplicate, when ratified by the seller contains the final and entire agreement between the parties hereto and they shall not be bound by any terms, conditions, statements or representations, oral or written, not herein contained."

There was no mention in this written contract of July 16, 1964, of the contract of January 7, 1963, of any of its provisions, or of the $6,000.00 held in escrow. The only provision in the contract of July 16, 1964, in regard to the amount of its consideration was that already indicated, *i.e.*, "Total price of property Eight Thousand Five Hundred Dollars ($8,500.00)," which amount the purchaser agreed to pay in "cash at the date of conveyance, of which sum this deposit [$2,000.00] shall be a part."

Settlement under the contract of July 16, 1964, was held on August 6, 1964, the balance of the consideration of $8,500.00 being paid by the purchaser. Apparently, a deed for the subject property was delivered by the sellers to the purchaser and duly recorded.

On December 31, 1964, the Circuit Court for Prince George's County, where the zoning appeal was pending, passed an order directing further hearings on the rezoning application. This was done. The County Commissioners again denied the application, but the Circuit Court, on October 23, 1965, reversed this action of the County Commissioners and granted the requested rezoning subject to a 150 foot setback from Pine Street.

Carolyn E. Pumphrey et al. filed an action against Mr.

Tessitore, Holly Hill and Messrs. Koch and Kehoe in the Circuit Court for Prince George's County. In their third amended declaration, they alleged the terms of the contract of January 7, 1963, (attaching a copy as a part of the declaration) and that the purchaser Tessitore had taken title paying at the time of settlement on October 11, 1963, the sum of $6,000.00. They further alleged that Tessitore had refused, notwithstanding numerous requests, to pay "the balance of the purchase price." It was then alleged that Tessitore had entered into the contract of July 16, 1964, with Holly Hill, a partnership and its principals, Messrs. Koch and Kehoe, which the plaintiffs construe to be an assignment of all the right, title and interest that Tessitore had "as well as all liabilities going therewith." It was then alleged that Holly Hill and Messrs. Koch and Kehoe "had full knowledge of the condition of" the contract of January 7, 1963, and took the conveyance under the contract of July 16, 1964, "with all of the rights as well as liabilities of the original Agreement." The contract of July 16, 1964, was attached as a part of the declaration. It was further alleged that among the conditions and as part of the consideration for the conveyance to Holly Hill and Messrs. Koch and Kehoe was the right "to be conveyed" to the defendants, Koch and Kehoe, "to pursue the zoning appeal * * * for the purpose of obtaining the zoning originally contemplated between the Plaintiffs and Daniel Tessitore." The appeal "was taken and after the conveyance of title to the said property by Daniel Tessitore to Koch and Kehoe, the zoning was successfully obtained as requested."

The damages claimed were $6,000.00 with 6% interest from October 11, 1963, and costs.

The defendants, Holly Hill and Messrs. Koch and Kehoe, filed the two general issue pleas in assumpsit—that they were never indebted as alleged and never promised as alleged—and a special plea of limitations, which apparently was not further pursued in the case.

At the trial of the case before Judge Digges (then

Chief Judge of the Circuit Court for Charles County and now a Judge of this Court), Mr. Tessitore testified that Mr. Panagoulis had done most of the negotiating with Mr. Koch in regard to the purchase of the subject property while the rezoning was pending. Mr. Tessitore also testified that he had suggested to Mr. Koch that he purchase the subject property; that Mr. Panagoulis had a few conversations with Mr. Koch and was authorized to act for the sellers; that Messrs. Koch and Kehoe had seen the contract of January 7, 1963, and that the contract of July 16, 1964, had come about as a result of negotiations by both Mr. Panagoulis and himself.

At the trial, Mr. Panagoulis did not appear and the parties stipulated that his deposition would be used in lieu of his contemplated testimony in court, without, however, waiving objections to the admissibility of his testimony on the merits. We will later consider certain specific testimony of Mr. Panagoulis.

Mr. Koch, in his testimony, denied that he had the conversations with Mr. Panagoulis, which we will consider later, and in no way acknowledged any responsibility for the payment of any additional $6,000.00 to the plaintiffs in the event that the rezoning was granted and asserted that the obligation of Mr. Tessitore, if any, to others was not part of Mr. Koch's agreement with Mr. Tessitore.

We now come to the specific testimony of Panagoulis in regard to the admissibility of which, the decision in the present case turns.

After testifying that Mr. Koch was advised by Mr. Panagoulis that Mr. Tessitore "had an additional obligation of $6,000.00 to pay if the zoning was obtained," and that, after discussing with Mr. Tessitore subsequent to the denial of the proposed rezoning by the County Commissioners, the possibility of a sale of the subject property to Koch and Kehoe, concerning which he spoke to Mr. Koch, the testimony of Mr. Panagoulis was, as follows:

Mr. Koch "agreed to an $8500 figure for the

land; he then asked me if Danny would give him the right to appeal the commissioners' action. I then informed him I would have to talk to Danny about it, but if he did he would also have to assume, to be granted the right to appeal, he would also assume any liabilities that went along with the contract.

"Q. Did you refer specifically to the additional $6,000 he paid to Pumphreys? A. It's my recollection, I believe I did.

"Q. Do you have any recollection of his reaction to your discussion? A. None whatsoever.

"Q. You don't know if he acknowledged that $6,000 debt or he did not, or what he said about it? A. No, I don't know; I'm sure he was aware that there was an obligation.

"Q. Because you had so informed him? A. Well, because I had so informed him, yes."

Judge Digges, on May 20, 1968, admitted this testimony into evidence. He instructed the jury to find a verdict against Mr. Tessitore, but submitted the case to the jury in regard to Holly Hill and Messrs. Koch and Kehoe with the instruction that if the jury found that there had been an express assumption of liability by those defendants, it was upon this basis that the jury could find a verdict against those defendants. The jury found a verdict against those defendants for $6,000.00. Those defendants, thereafter, filed a motion for a judgment n.o.v. in their favor or, in the alternative for a new trial. After further consideration, Judge Digges concluded that under the applicable law, the parol evidence already mentioned should not have been admitted into evidence and granted a new trial as to those defendants.

When the case came on for the new trial on November 13, 1969, before Judge Parker, the parties stipulated that the same testimony taken before Judge Digges at the first trial would be the evidence before the court without a jury at the second trial, saving, however, the questions

in regard to admissibility of that evidence and of the rights of the plaintiffs to appeal from rulings on those questions if the judgment should be against them.

Judge Parker also concluded that the parol evidence was not admissible and granted the motion of Holly Hill and Messrs. Koch and Kehoe for a directed verdict in their verdict. From a judgment in their favor for costs, the plaintiffs perfected a timely appeal to this Court.

It may well be argued that even assuming that the parol evidence in question were admissible, it would not be legally sufficient to justify a finding of an *express* assumption of an obligation by Holly Hill and Messrs. Koch and Kehoe to pay the plaintiffs an additional $6,000.00 in view of the lack of recollection by Mr. Panagoulis of Mr. Koch's reaction to the discussion in regard to the additional $6,000.00 and Mr. Koch's denial of any alleged express assumption of any liability to pay that amount to the plaintiffs in the event the rezoning were granted. We shall assume for the purposes of the argument, without deciding, that the evidence in question, with all reasonable inferences from it, would be legally sufficient to submit to a jury the question in regard to whether there had been such an express assumption and will decide the issue of admissibility as did both Judge Digges and Judge Parker in the lower court.

The parol evidence rule is a rule of substantive law and not merely a rule of evidence.

"The question is, of course, not one of the credibility of this evidence, but whether its introduction was permissible in the face of the parol evidence rule. As has often been pointed out, the very term 'parol evidence rule' is really a misnomer because it is not a rule of evidence at all but is a rule of substantive law. *Restatement of Contracts,* Sec. 237; *Williston on Contracts,* Rev. Ed., Vol. 3, Sec. 631; *Corbin on Contracts,* Sec. 573; *Wigmore on Evidence,* 3d Ed., Sec. 2400. As Professor Wigmore states: 'It does not

exclude certain data because they are for one reason or another untrustworthy or undesirable means of evidencing some fact to be proved. * * * What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all.' Therefore, if the parol evidence rule is applicable, no evidence of any kind can be introduced to change the writing."
(*Rinaudo v. Bloom,* 209 Md. 1, 6, 120 A. 2d 184 (1956).)

It was stated in *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 666, 150 A. 2d 884 (1959) that, "parol evidence is inadmissible to vary, alter or contradict a writing which is complete and unambiguous, where no fraud, accident or mistake is claimed, *Glass v. Doctors Hospital, Inc.,* 213 Md. 44, 57, 131 A. 2d 254; but where doubt arises as to the true sense and meaning of the words themselves or difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument." See also *Foreman v. Melrod,* 257 Md. 435, 263 A. 2d 559 (1970) ; *Davidson v. Katz,* 254 Md. 69, 255 A. 2d 49 (1969).

A rigid enforcement of the parol evidence rule should occur in cases involving the sale of an interest in land in which the Statute of Frauds, 29 Car. II, Cap. III, Section IV, Subsection 4 requires that the contract be evidenced by a writing, signed by the party to be charged, in order to be enforced. *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19 (1941). The alleged oral contract to assume liability for payment of the $6.000.00 having been made prior to the integration of the written contract of July 16, 1964, the question is presented in regard to whether the oral testimony in question would vary, alter or contradict the provisions of the written contract. In our

opinion, it does. As we have observed, the written contract of July 16, 1964, contains no language which specifically assumes any alleged obligation under the prior contract of January 7, 1963, between Mr. Tessitore and the plaintiffs. The plaintiffs are not parties to the contract of July 16, 1964. That contract states that "the *total* price" (Emphasis supplied.) of the subject property is $8,500.00 which the purchasers agreed to pay in "cash at the date of conveyance." No other consideration is mentioned. The language is clear and unambiguous. An attempt to introduce evidence of an oral assumption of liability under an unmentioned prior contract would, in our opinion, contradict and attempt to vary the terms of the contract of July 16, 1964. Then, too, the provision of that contract that its written terms comprise the entire agreement, which we have already quoted, although not absolutely conclusive, is indicative of the intention of the parties to finalize their complete understanding in the written contract and hence that there was no other prior or contemporaneous agreement not included in the written contract. See *Shoreham Developers v. Randolph Hills, Inc.*, 248 Md. 267, 235 A. 2d 735 (1967). Nor is an alleged oral assumption of liability under a prior contract, the type of oral agreement which would likely exist as a collateral agreement independent of the provisions of the written contract. *Kikas v. Baltimore County*, 200 Md. 360, 89 A. 2d 625 (1952); *Markoff v. Kreiner, supra* and *Rinaudo v. Bloom, supra.*

The consideration for the written contract of July 16, 1964, is mentioned in that contract; and if there were thought to be an agreement in regard to any additional consideration, it would have been included in the written contract. It may also be observed that the specific mention in the written contract of a conveyance to the purchasers of the sellers' right, title and interest in the subject property, including the right to prosecute the rezoning appeal—a provision not inconsistent with the price term already set forth—without mentioning any assumption of an alleged obligation under the prior contract,

negatives the existence of an alleged oral collateral contract in this regard.

The plaintiffs and appellants earnestly argue that, in any event, if the right to appeal from the adverse rezoning action by the County Commissioners is viewed as an assignment, there may be an *implied* assumption of any duties correlative with the right assigned. This, however, is a matter of interpretation of the written contract and our predecessors have held that it is required that the assignee must *expressly assume* these duties, there being no implication of assumption by the mere assignment. *East Vedado Corp. v. E. S. Adkins & Co.*, 157 Md. 416, 146 A. 385 (1927). See also *Williston on Contracts* (3rd Ed.), § 418 A, page 109, where it is stated:

> "It must be conceded, however, that at least in regard to contracts for the sale of land the great majority of decisions strongly take the position that the assignee of the purchaser does not become bound to the vendor for the price in the absence of an express assumption of the duty in his contract with the assignor. The analogy to the transfer of mortgaged lands has doubtless been influential.
>
> "The distinction between a purchase subject to a mortgage and one where the purchaser agrees to assume payment of the mortgage is familiar, and not unnaturally might lead to a similar distinction in the case of an assignment of a land contract. Where the assignment is merely for security this is clearly true. This fact is enough to show a positive intention not to assume the burdens of the contract, *and if a written assignment of a land contract contains no assumption of the assignor's duty, the omission cannot be supplied by parol evidence.*"
>
> (Emphasis supplied.)

Compare 4 *Corbin on Contracts* (1951), § 906, pgs. 628-31.

We do not understand that the decision of the Court of Appeals of New York in *Langel v. Betz,* 250 N. Y. 159, 164 N. E. 890 (1928)—relied upon by the appellants—is inconsistent with our decision in the present case, inasmuch as in *Langel,* although it was indicated that an *express promise* to assume correlative duties of the assignment might have been binding on the parties, nevertheless the assignment, in and of itself, did not carry an assumption of such duties.

> *Judgment affirmed, the appellants to pay the costs.*