554 A.2d 818

**James K. BOHLE et ux.**

v.

**Harold Rodney THOMPSON et al.**

**No. 915, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 13, 1989.

616

Steven T. Cain, Upper Marlboro, for appellants.

Debra B. Koehler (Naji P. Maloof, on the brief), Upper Marlboro, for appellees.

Argued before MOYLAN, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

Oft times members of both the bench and bar are criticized for failing to distinguish the forest from the trees. In this case, however, the controversy arises from an attempt to separate the trees from the forest. On appeal, a veritable smorgasbord of issues are presented, including questions on parol evidence, conversion, effect of notice of prior interest in property, and attorney's fees. The appeal stems from a controversy concerning the ownership of standing timber on land located in St. Mary's County. On September 23, 1986, James K. and Helen Bohle, appellants, filed suit in the Circuit Court for St. Mary's County against Charlotte Hall Lumber Company ("Charlotte Hall") and Rodney and Jeanette Thompson, appellees, alleging counts in trespass and conversion against Charlotte Hall and two counts of fraud against the Thompsons. On the same day, Charlotte Hall filed a separate complaint against the Bohles, seeking injunctive relief and/or damages. Eventually, the case

proceeded to trial on Charlotte Hall's claims against the Bohles.[1]

After a two-day court trial, the circuit court entered judgment in favor of Charlotte Hall in the amount of $60,000. Further, the court imposed sanctions pursuant to Rule 1–341 in favor of the Thompsons against the Bohles in the amount of $7,500 after finding that the Bohles' suit was "without substantial justification." With the exception of an assessment of $553.85 in deposition costs, the court denied Charlotte Hall's request for attorney's fees. The Bohles then noted this timely appeal.

## FACTS

The pertinent facts as the trial court found them are as follows. On February 25, 1985, the Thompsons entered into a contract of sale with Brandywine Auto Parts, Inc. Profit Sharing Plan to purchase a 539 acre tract of land in St. Mary's County. Soon thereafter, discussions between the Thompsons and the Bohles ensued. These discussions concerned the possible purchase of a portion of the land from the Thompsons by the Bohles. In response to what he perceived to be the Bohles' apprehension about Thompson's plan to sell the timber on the property, Mr. Thompson stated to the Bohles that, in order to finance his purchase of the property, and consequently the Bohles' purchase, he would have to enter into a contract to sell all the timber.

---

1. In response to Charlotte Hall's complaint, the Bohles moved for a more definite statement pursuant to Maryland Rule 2–322(d). Eventually, the Bohles' motion was denied, the cases were consolidated, and unspecified attorney's fees incurred by Charlotte Hall in contesting the motion were assessed against the Bohles pursuant to Maryland Rule 1–341.

 The Bohles subsequently amended their complaint, adding a fifth count to seek reimbursement for legal expenses from the Thompsons should the Bohles be successful in their complaint against the Charlotte Hall. Prior to trial, the Bohles moved to dismiss their complaint, with the exception of the fifth count, against the Thompsons and Charlotte Hall.

On April 25, 1985, the Thompsons entered into a contract with Charlotte Hall to sell "all the merchantable hardwood timber that is 16 in. and up except poplar and sweet gum, 14 in. and up" on the tract of land. The contract also gave Charlotte Hall the right to enter the property and remove the timber. Charlotte Hall was given two years from the date of settlement to cut and remove the timber, with an option to extend the contract for an additional six months upon payment to the Thompsons of a $5,000 fee. Subsequently, the Thompsons travelled to the Bohle residence and showed them the timber contract, which the Bohles read. On April 29, 1985, the Bohles and the Thompsons entered into a contract for the sale of approximately 100 acres of the 539 acre parcel of land.

At settlement on June 28, 1985, the Thompsons obtained fee simple title to the 539 acre tract. Shortly thereafter, a second settlement took place, at which the Bohles obtained fee simple title to approximately 137 acres of land.[2]

In late July or early August of 1985, Charlotte Hall employees came onto the Bohle property and, during a two week period, they cut ten to twelve acres of timber. Subsequently, they commenced cutting on a part of the tract retained by the Thompsons. They returned in June, 1986 to renew cutting on the Bohle property. The Bohles told Charlotte Hall that if their employees cut any more trees on this property, the Bohles would have them arrested. Subsequently, the county sheriff, at the behest of the Bohles, forced Charlotte Hall to remove its equipment from the Bohle property or risk impoundment of the equipment. This suit followed.

On appeal, the Bohles ask us to decide whether the court erred:

1. in considering parol evidence of an assumption of an obligation against a purchaser under a written con-

---

2. Subsequent to settlement on the contract of sale for the approximately 100 acre tract, the Bohles and Thompsons entered into an oral agreement for the sale of another thirty-seven acres of land.

tract for the sale of real estate where the contract is silent as to the point and is otherwise clear and unambiguous.

2. in finding that Charlotte Hall's complaint fairly pled a cause of action for conversion.

3. in finding that a cause of action for conversion was proved by Charlotte Hall against the Bohles.

4. in assessing damages against the Bohles under the conversion theory.

5. in assessing attorney's fees against the Bohles in favor of the Thompsons.

6. in assessing unspecified attorney's fees against the Bohles in favor of Charlotte Hall.

7. in granting judgment in favor of the Thompsons as to Count V of the Bohles' complaint.

### 1. *Parol Evidence Rule*

The Bohles contend that the trial court erred in allowing several witnesses to testify that the Bohles had knowledge of the timber contract prior to their purchase of the 100 plus acres from the Thompsons. Such testimony, they contend, contravenes the express language of both the contract of sale and the deed, which purported to convey the land and the trees to them in fee simple. Further, they argue that the contract of sale contains an integration clause.

The parol evidence rule provides that:

when the contractual language is clear and unambiguous, and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties to vary, alter, or contradict the terms of that contract.

*General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261–62, 492 A.2d 1306 (1985).

■ Unfortunately for the appellants, the parol evidence rule has no application to the present circumstances. Simply put, the parol evidence rule does not bar a stranger to a

writing from introducing extrinsic evidence to impeach, contradict, or vary the terms of the writing. *Grove v. Rentch*, 26 Md. 367, 378–79 (1867); *Alderson v. Ames*, 6 Md. 52, 57 (1854). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347 n. 12, 91 S.Ct. 795, 810 n. 12, 28 L.Ed.2d 77 (1971).

In any event, the evidence was introduced by Charlotte Hall to show that appellants possessed knowledge of the earlier timber contract; it was not introduced to vary or contradict any contract between the Bohles and the Thompsons. In fact, any agreement between those parties is irrelevant to Charlotte Hall's claim of ownership to the timber. Because Charlotte Hall is not a party to the Bohle–Thompson contract of sale or deed transferring title to the real property, any purported agreements between those parties is not relevant to a determination of its rights under the earlier timber contract.

Thus, Charlotte Hall's introduction of the evidence in question was not to vary the Bohle–Thompson agreement, but rather to show that the Bohles knew of the prior timber agreement. Consequently, Charlotte Hall's position is that the Bohles took title to the property subject to the timber agreement.[3] To sustain appellants' argument would result

---

3. *Pumphrey v. Kehoe*, 261 Md. 496, 276 A.2d 194 (1971), a case relied upon by appellant, is distinguishable. In *Pumphrey*, the issue was whether purchasers of land were bound by an agreement between the vendor and the original owner. That agreement provided for additional compensation to the original owner should the property be rezoned to a higher density residential zone. The subsequent contract of sale did not include the compensation provision. The original owner introduced evidence that the purchasers assumed this obligation from their vendor. On motion for J.N.O.V., the trial court ruled that the evidence was wrongly admitted and granted appellees a new trial. The Court of Appeals affirmed.

Thus, in· *Pumphrey*, the evidence was introduced to show that the purchasers intended to be bound by the compensation provision in the earlier contract of sale although the subsequent contract was silent. The subsequent purchaser's mere knowledge of the compensation provision was irrelevant because such knowledge did not pertain to another person's equities or interest in the property itself. As such, knowledge of the compensation provision is the earlier contract of

in a prohibition against the introduction of any evidence that would tend to indicate that a subsequent purchaser was on inquiry notice or had actual notice of a third person's rights in property.

It is well settled that the owner of a fixture and the owner of the realty upon which the fixture is attached may agree that the fixture will remain personalty, and such an agreement is binding on subsequent purchasers of the realty who have notice of the agreement. *Hankins v. Luebker,* 224 Ark. 425, 274 S.W.2d 356, 358 (1955); *Leawood Nat'l Bank v. City Nat'l Bank & Trust Co.,* 474 S.W.2d 641, 644 (Kan.App.1971); *Sutton v. Frost,* 432 A.2d 1311, 1315 (Me.1981); *Lee–Moore Oil Co. v. Cleary,* 295 N.C. 417, 245 S.E.2d 720, 725 (1978); *Lundgren v. Mohagen,* 426 N.W.2d 563, 565 (N.D.1988); *Burlington Northern R. Co. v. Scheid,* 398 N.W.2d 114, 119 (N.D.1986); *Harris v. Rapke,* 138 Misc.2d 538, 524 N.Y.S.2d 1003 (City Ct.1988); *Johnson v. Hicks,* 51 Or.App. 667, 626 P.2d 938, 941 (1981); *C.I.T. Financial Serv. v. Premier Corp.,* 747 P.2d 934, 937 (Okl.1987); *Royal Store Fixture Co. v. Patten,* 183 Pa.Super. 249, 130 A.2d 271, 274 (1957); *Boeringa v. Perry,* 96 Wash. 57, 164 P. 773 (1967). The above rule has been applied to determine rights under timber contracts and subsequent sales of the realty upon which the timber stands. *Plew v. Colorado Lumber Products,* 28 Colo.App. 557, 481 P.2d 127 (1970), *cert. denied,* (Colo.1971); *Spencer v. Strange,* 184 So.2d 878 (Miss.1966); *Pegg v. Mid–State Develop. Corp.,* 164 Mont. 525, 529 P.2d 1399 (1974); *Borton v. Medicine Rock Land Co.,* 275 Or. 59, 549 P.2d 1122 (1976). *See generally* 18 A.L.R.2d 1150 (1951). Although some of the timber cases refer to the timber contracts as affecting an interest in realty, this distinction as to characterization is not relevant. To the contrary, the fixtures in

---

sale would not necessarily bind them. In the case *sub judice,* the testimony was admitted to show that appellants knew of the prior timber contract. Because such knowledge would constitute actual notice of a prior equity in the property (albeit such property would be characterized as personalty), they would not be bona fide purchasers.

the cases, *supra,* were characterized as personalty, the ownership of which would pass with the ownership of realty where the subsequent purchaser of realty was without notice of the prior interest. Further, a person who owns both realty and fixtures upon the realty may effect a constructive severance of the fixtures as personalty in a sales agreement, said agreement being binding on subsequent purchasers of the realty with notice. *Leawood Nat'l Bank, supra; Lundgren, supra.*

The inappropriateness of application of the parol evidence rule is so patent that only one of the cases above even discusses such an argument:

> Here we are concerned with the rights arising between the original owner of the personalty, who has no interest in the real property to which it was affixed, and a subsequent vendee of the owner of the realty. Dealings regarding personalty between the owner of the personalty and the owner of the realty, and knowledge thereof on the part of a subsequent purchaser of the realty, may be shown by parol.

*Loe–Moore Oil Co., supra,* 245 S.E.2d at 725.

In Maryland, the general rule regarding fixtures has been adopted, and subsequent purchasers of realty with notice have been bound by the prior characterization of the fixtures as personalty. *See Baldwin v. Sherwood Distilling Co.,* 118 Md. 177, 181 (1912); *Central Trust Co. v. Arctic Ice Machine Mfg., Co.,* 77 Md. 202, 222, 26 A. 493 (1893); *Walker v. Schindel,* 58 Md. 360, 369 (1882).

Whether the property involved is characterized as realty or personalty, a subsequent purchaser of realty with actual notice of a third person's equities in property takes title subject to those equities. To apply the parol evidence rule to prevent the owner of the personalty from proving that a subsequent purchaser of the realty possessed actual notice of the prior interest would, in effect, result in the emasculation of the general principles of law stated above. It would also expand that doctrine to envelop situations where the

evidence in question was not being offered to vary, alter, or contradict a writing, *see Pumphrey v. Kehoe,* 261 Md. 496, 504, 276 A.2d 194 (1971); in fact, the contents of the contract of sale between the Thompsons and the Bohles and the subsequent deed to the property are wholly irrelevant. To the extent pertinent, the rights of the Bohles and Charlotte Hall may be determined without reference to either document.

■ Finally, we held in *Peruzzi Bros., Inc. v. Contee,* 72 Md.App. 118, 527 A.2d 821 (1987), that "one who is not a bona fide purchaser may not invoke the parol evidence rule." *Id.* at 123, 527 A.2d 821. *Peruzzi Bros.* involved a dispute over ownership of a small strip of property. There, appellee purchased property from appellant's predecessor in title and entered into an oral agreement with appellant's predecessor regarding the strip in question. The predecessor placed pipes in the ground to indicate the new boundary although no deed regarding this strip of property was created. Several years later appellant purchased an adjacent parcel of property from the same person and requested a confirmatory deed covering the disputed property. In refusing to apply the parol evidence rule to the earlier transfer to appellee, the court noted that "appellant was not a bona fide purchaser without notice of appellee's claims." *Id.* Thus, even if the parol evidence rule were somehow applicable in this case, the Bohles would be precluded from relying on it to exclude evidence tending to show that they were not bona fide purchasers without notice of any claims. Accordingly, we hold that the trial court did not err in admitting testimony tending to show that appellants had actual knowledge of the timber contract between Charlotte Hall and the Thompsons prior to their purchase of land from the Thompsons.

### 2. *Charlotte Hall's Complaint—Conversion*

■ Appellants assign as error the trial court's "finding" that the complaint stated a cause of action for conversion. Appellants do not point to any specific element of conversion lacking in the complaint; rather their argument con-

sists of two theories: (1) a finding by the trial court of conversion and related damages is inconsistent with the injunctive remedy requested by Charlotte Hall and (2) the complaint was too vague and ambiguous for appellants to frame a proper answer to it. Responding to appellants' second argument first, we hold that appellants have waived any argument that they may have possessed as to whether Charlotte Hall's complaint properly pleaded a cause of action for conversion. The record in this case does not reveal that appellants filed anything other than a motion for a more definite statement in attacking the sufficiency of the complaint. If appellants' contention is that Charlotte Hall's complaint failed to plead a cause of action against them, the filing of a Motion to Dismiss, not a Motion for a More Definite Statement, would have been the proper action to take. Wright & Miller, *Federal Practice & Procedure*, Vol. 5, § 1376, p. 732–33 (1969). *See also G & H Clearing & Landscaping v. Whitworth*, 66 Md.App. 348, 356 n. 5, 503 A.2d 1379 (1986) (Md.Rule 2–322 derived from Federal Rules of Civil Procedure, § 12).

Appellants further contend that the complaint only sought injunctive relief and *related* damages. Therefore, they argue that the trial court erred in ordering them to pay damages for conversion of appellees' timber. Our review of the complaint reveals that the primary relief sought by Charlotte Hall was injunctive in nature. It is obvious, however, that damages were also contemplated, as shown by the request in the complaint, that the court "assess damages against the defendant, both compensatory and punative [sic]." Further, the complaint contains a general prayer for "such other and further relief as the nature of this case may require."

Appellants' reliance on *Campbell v. Welsh*, 54 Md.App. 614, 460 A.2d 76 (1983), *cert. denied*, 297 Md. 108 (1984), is misplaced. In *Campbell*, appellant initially filed a complaint seeking to have property conveyed from his mother's estate to him pursuant to an alleged oral agreement between his mother and himself prior to her death. The

complaint included a general prayer for relief. Subsequently, he amended his complaint to include a damage claim for improvements that he made on the subject property in the event that specific performance was not granted.

This court held that appellants' claim for specific performance was barred by the Statute of Frauds. Further, appellants' damages claim was added after the six month statute of limitations had expired for claims to be presented against an estate of a decedent.

The appellant in *Campbell* tried to circumvent the 6–months statute of limitations by arguing that his claim for damages was subsumed within the general prayer for relief in the original complaint. This court disagreed, stating:

> That does not mean, however, that a general prayer for relief suffices as the presentment of a claim under § 8–104 or that a specific prayer for relief filed after the six-month period, though permissible under Maryland Rule 320, constitutes a timely presentment under § 8–103 merely because such relief might have been possible under the general prayer.
>
> Section 8–103, read in conjunction with § 8–104, requires that the claim directed to be presented within the six-month period be sufficiently clear and certain as fairly to apprise the personal representative of what the claimant is seeking. That requirement simply is not met by a general prayer for relief, which tells the personal representative next to nothing. The personal representative cannot be left to guess what kinds of specific claims might eventually spring forth from such a prayer at one or more points in the future.
>
> Upon this record, it is clear that appellant's alternative claim for money damages was not timely presented, and that the court was correct in its entry of summary judgment. *Cf. Hamilton v. Thirston*, 94 Md. 253 [51 A. 42] (1902).

*Id.* 54 Md.App. at 631–32, 460 A.2d 76.

Unlike *Campbell*, where the general prayer for relief told "the personal representative next to nothing," here, as

indicated above, Charlotte Hall specifically asked the court to assess both compensatory and punitive damages.

In this case, the facts pled in Charlotte Hall's complaint give rise to both equitable relief and damages for conversion. Although the trial court's reasoning for refusing to grant injunctive relief is not in the record, it is apparent that the contract between Charlotte Hall and the Thompsons expired by its terms on June 28, 1987, which was two years from the date of settlement.[4] Trial was held on the 21st and 22nd of April, 1988. Under the contract, Charlotte Hall was precluded from coming onto the land after June 28, 1987, and "all Lopwood, or Slabs, or Tops, if any, reverts back to and becomes the Property of the First Part." Thus, the trial judge may have felt that he was precluded from granting injunctive relief at this juncture of the case.[5]

In *Bowie v. Ford*, 269 Md. 111, 304 A.2d 803 (1973), the Court of Appeals stated that "the law of this state is well settled that if the specifically requested remedy cannot be granted, relief suitable to the nature of the case is authorized under the prayer for general relief." *Id.* at 122, 304 A.2d 803 (cited cases omitted). In *Phillips Co. v. Maryland Broadcast Co.*, 184 Md. 187, 40 A.2d 298 (1944), appellant sued for injunctive relief against appellee to prevent appellee from interfering with radio broadcasts on appellee's station pursuant to a contract between the parties. A general prayer for relief was also included. The trial court dismissed the complaint. The Court of Appeals reversed, stating:

---

**4.** There is no evidence in the record that indicates that Charlotte Hall exercised its option to extend the contract for another six months by payment of $5,000 to the Thompsons. Even if such an option was exercised, the contract would have expired nearly four months prior to trial.

**5.** We need not discuss whether the Bohles would have been equitably estopped from relying on this contractual provision. The trial judge need only have determined that an adequate legal remedy existed.

As the contract has expired it is now too late to grant an injunction to restrain the appellee from interfering with the rights of the appellant under the contract. But the appellant may have suffered damages by reason of the illegal cancellation of the contract by the appellee. The bill of complaint contains a prayer for general relief. Under the prayer for general relief, the Court is not confined to what may be specially asked, but may adapt the relief to the nature of the case as stated in the bill; and if the specific relief prayed for cannot be granted, the plaintiff may be given any relief which is consistent with and warranted by the allegations of the bill. *Miller's Equity Procedure*, Sec 100; *Hill v. Pinder*, 150 Md. 397, 133 A. 134 [1926]; *Boehm v. Boehm*, 182 Md. 254, 34 A.2d 447 [1943]. Even though the granting of the injunction would be a nugatory act, the Chancellor should retain his jurisdiction until he makes a final decree determining all the rights and equities of the parties within the scope of the pleadings for the purpose of granting complete relief.

*Id.* 184 Md. at 197–98, 40 A.2d 298. Under the present circumstances, expiration of the time frame provided for by the timber contract may have led the trial court to fashion relief by way of damages rather than an order for injunctive relief.

### Proof of Conversion

■ Appellants contend that Charlotte Hall failed to prove that appellants' converted its property. Specifically, appellants state that Charlotte Hall failed to prove that it owned the timber in question.[6] To recover on a conversion theory, a plaintiff must prove "any distinct act of ownership

---

6. While we do not hold that one who is not "an owner" of the chattel may never recover under a conversion theory, *see generally* Harper, James & Gray, *The Law of Torts*, Vol. 1 (2d ed. 1986), § 2.2, our conclusion that Charlotte Hall had title to the standing timber and, therefore, was the owner does not require us to decide whether Charlotte Hall could otherwise recover for conversion.

or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 64, 502 A.2d 1057 (1986). *Cf. Kalb v. Vega*, 56 Md.App. 653, 665, 468 A.2d 676 (1983), *cert. denied*, 299 Md. 427, 474 A.2d 219 (1984) ("a wrongful exercise of dominion by one person over the personal property of another"). The wronged person is entitled to recover the fair market value of the property at the place and time of the conversion. *See Checkpoint v. Sweeney*, 250 Md. 251, 253, 242 A.2d 148 (1968); *Abbott v. Forest Hill State Bank*, 60 Md.App. 447, 454, 483 A.2d 387 (1984); *Kalb, supra*, 56 Md.App. at 665, 468 A.2d 676; *Staub v. Staub*, 37 Md.App. 141, 145, 376 A.2d 1129 (1977).

The "Contract of Sales and Timber Lease" entered into between the Thompsons and Charlotte Hall was a contract for the sale of all "the Merchantable Hardwood Timber" on the 539 acre tract of land to which the Thompsons possessed equitable title by virtue of the contract of sales agreement entered into on February 25, 1985. *See Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794 (1985); *Stebbins–Anderson Co. v. Bolton*, 208 Md. 183, 188, 117 A.2d 908 (1955); *Takas v. Doerfler*, 187 Md. 62, 66, 48 A.2d 328 (1946); *Clarence Bull, Inc. v. Goldman*, 30 Md.App. 665, 667, 353 A.2d 661 (1976). The timber contract also provided to Charlotte Hall the right to enter onto the property to cut the timber. Charlotte Hall was given two years from the date of settlement to cut and remove the timber from the property with an option to extend the contract an additional six months. Upon signing the contract, the Thompsons were to receive $10,000. On July 10, 1985, they were to receive an additional $90,000, and on December 10, 1985, they were to receive a final payment of $40,000.

■ Under the Uniform Commercial Code, the sale of standing timber is a sale of goods, whether the purchaser or the vendor is to cut the timber. Md.Com.Law Code Ann., § 2–107(2) (1988 Cum.Supp.). Further, "the parties can by identification effect a present sale before severance." *Id.* Because a contract of sale does not necessarily effect an

immediate transfer of an ownership interest, an issue arises as to the equitable ownership of the timber at the time the Thompsons entered into the contract of sale with the Bohles.

■ "Title to goods cannot pass under a contract of sale prior to their identification to the contract...." Md. Com.Law Code Ann., § 2–401(1). "Unless otherwise expressly agreed where delivery is to be made without moving the goods, [i]f the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of the contracting." § 2–401(3)(b). "In the absence of explicit agreement identification occurs [w]here the contract is made if it is for the sale of goods already existing and identified, ..." § 2–501(1)(a). A dearth of case law in Maryland determining the necessary circumstances for identification to occur leads us to an examination of case law in other jurisdictions.

In *Lubecki v. Omega Logging, Inc.*, 674 F.Supp. 501 (W.D.Pa.1987), the court held that identification under § 2–107(b) occurred:

> because the contract for sale of timber specified, with the exception of the timber along Whitestown Road, the size and species of the trees to be severed by the defendant and the areas where such severance was permitted, identification occurred, effecting a present sale of the trees to the defendant. 13 Pa.C.S. § 2107(b). Consequently, the timber was "constructively severed," and title to the timber passed to the defendant when the contract was made. *See* 13 Pa.C.S. § 2106(a) (a "present sale" means a sale which is accomplished by the making of the contract; a "sale" consists in the passing of title from the seller to the buyer for a price.)

*Id.* at 507. Thus, the fact that the timber contract in *Lubecki* specified the size and species of the trees to be severed and the area where severance was to be permitted was sufficient to satisfy the identification requirement. Further, that court considered the fact that the length of

time of the contract (one year) and the provision for additional consideration to be paid by the logging company if that time limit was exceeded indicated an intent to sever the timber immediately. *Id.*

In *Fisher v. Elmore,* 610 F.Supp. 123 (E.D.N.C.1985), the United States District Court held that identification had not occurred; therefore, title to the timber did not pass until the buyer entered onto the property and cut and removed the timber. In so holding, the court explained:

> The provisions of North Carolina General Statute 25–2–501(1) determine the manner of identification. Under the undisputed facts in this case, the buyer had to reduce the subject goods to his possession by cutting the timber before any payment was due. The buyer was under no compulsion to cut the first log nor was the buyer under any compulsion to cut any particular type of log. The buyer had the right to clear cut all of the standing timber including the pulpwood, hardwood and saw timber but until such time as this right was exercised, the seller had no entitlement to payment. If the buyer was delinquent in any payment, the contract could be immediately terminated and the buyer would have no further rights to continue cutting the timber. It is manifest that the buyer had to select the timber and reduce it to its possession before any obligation arose to pay the seller and this event was the identification contemplated by the parties in the contract which, by operation of law, determined when the title passed pursuant to N.C.G.S. 25–2–401.

*Id.* at 124–25.

The situation before us is clearly more analogous to *Lubecki* than it is to *Fisher.* The Charlotte Hall timber contract specified the type of wood to be cut, the height over which wood could be cut, and the area to be cut. Further, there is no indication in the record that the two year time frame in which Charlotte Hall could harvest timber was not a reasonable time to cut approximately 450 acres of timber. Unlike the situation in *Fisher,* Charlotte Hall was obligated to pay $140,000 to the Thompsons in

three separate installments without regard to how much timber was actually harvested. Thus, payment of cash was not contingent on the cutting of the timber. We hold that under § 2–107(2) the timber was identified to the contract at the time the contract was executed. Therefore, Charlotte Hall already had title to the timber at the time the contract of sale between the Thompsons and the Bohles was executed.

Although the trial court found as a matter of fact that the Bohles knew of, and even read, the timber contract prior to entering into the agreement to purchase a portion of the Thompson property, the Bohles argue that under § 2–107(3), Charlotte Hall was required to record the timber contract in the St. Mary's County land records. Section 2–107(3) provides:

> The provisions of this section are subject to any third party rights provided by the law relating to realty records, and the contract for sale may be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the buyer's rights under the contract for sale.

The Bohles interpret the phrase "shall then" as precluding the buyer of timber from utilizing other forms of notice to protect his interest. We do not construe this provision as precluding a person from relying on actual notice to prevent a subsequent purchaser from acquiring a superior interest in property. Actual notice of another person's interest in property will always suffice to defeat a subsequent purchaser's claim of superior rights in the property. The Bohles possessed actual notice of the rights and obligations of the timber contract. As such, they were not bona fide purchasers, and they took title to the real property subject to Charlotte Hall's interest in the timber.

The act of ordering Charlotte Hall employees off their property and calling the sheriff to force Charlotte Hall to remove its equipment was an act of dominion and control over the timber, subjecting the Bohles to liability for

conversion. The right of entry given to Charlotte Hall in the timber contract coupled with its ownership of the timber gave rise to an irrevocable license to enter onto the property to cut and remove the timber. *See Lubecki, supra,* 674 F.Supp. at 511. The fact that the Bohles did not expressly assume the obligations under the timber contract is irrelevant; knowledge of the timber contract was sufficient to defeat any claim of ownership to the timber and render them liable to Charlotte Hall for conversion. Therefore, the trial court's finding that the Bohles converted timber owned by Charlotte Hall was not clearly erroneous.

### Conversion Damages

As we have stated, *supra,* damages for conversion are the fair market value of the property at the time and place of the conversion. Adopting an appraisal undertaken in November, 1987, and rounding the figures off, the trial court awarded to Charlotte Hall $60,000 in damages. The Bohles argue that the evidence was insufficient to prove damages resulting from the conversion. They contend that the conversion took place in October, 1985, and that the only evidence of the fair market value of the property, the appraisal undertaken in November, 1987 was too remote for the trial court to rely upon. Charlotte Hall counters that the act of conversion was continuous in nature and continued through the date of trial.

■■■ At trial, appellants moved for judgment after Charlotte Hall's case-in-chief. One of their arguments in support of the motion was that Charlotte Hall failed to prove damages. The lower court reserved ruling on all motions. The Bohles then presented their defense, at the conclusion of which the trial court queried the parties as to whether they were renewing their motions. The Bohles renewed their motion for judgment, but this time they apparently did not state with particularity the reasons in support of their

renewed motion.[7]

■ Appellants did not object to the admissibility of the November, 1987 appraisal report but, rather, their argument was that the appraisal was insufficient to prove the value at the time of the conversion. This argument goes to the sufficiency of the evidence. We hold that the effect of the report goes to the weight of the evidence, rather than its legal sufficiency. Judge Woods, as trier of the fact, could give the report such weight as he deemed appropriate.

■ Interestingly, neither party focused on the proper date on which the fair market value of the timber should have been determined. The October, 1985 date relied upon by appellants was the date on which appellants signed a State of Maryland Department of Natural Resources site complaint against Charlotte Hall, alleging that Charlotte Hall was engaged in "earth disturbance ... without an approved sediment and erosion control plan." Compelling the owner of property to comply with state or county regulations is not an act inconsistent with that person's ownership; in fact, it could be construed as an act implicitly recognizing the other person's ownership of the property. Further, the fact that Charlotte Hall re-entered appellant's property to cut timber the following summer militates against October, 1985 as being the month in which the conversion took place.

■ The affirmative act of conversion took place in June or July, 1986. That was the approximate period within which the Bohles forced Charlotte Hall off of their property. At trial, testimony from an appraiser, John Balako, indicated that the overall price of timber in November, 1987

---

7. Had this case been tried by a jury, appellants' failure to state with particularlity their damage argument might have served as a waiver of that issue on appeal. *See Ford v. Tittsworth,* 77 Md.App. 770, 772, 551 A.2d 945, 946 (1989); but as this was an action tried without a jury we "will review the case on both the law and the evidence." Rule 8–131(c); *see Ford v. State,* 73 Md.App. 391, 534 A.2d 992 (1988). We observe that the rule applies to both civil and criminal cases.

was considerably higher than in June, 1986. Yet, the trial court entered damages in reliance on the appraisal report with no corresponding reduction. The most that the testimony as to damages establishes is, assuming a steady increase in prices, some prices could have risen from the time of conversion to November, 1987 as much as 30%.

Thus, it appears that the trial judge, having obviously based his award of damages on the 1987 value, may have applied a "continuing conversion" theory. That theory is somewhat inconsistent with the principles underlying the law of conversion, which mandate that the wronged party recover fair market value for his property, in exchange for which the wrongdoer becomes owner of the property. *See Restatement (Second) of Torts*, § 222A (Comment c). In other words, "[t]he effect of the judgment once it is satisfied, is often described as vesting title to the chattel in defendant as of the time of the conversion, the date fixed by law for the compulsory purchase." *Harper, James & Gray, supra*, § 2.12 pp. 170–71. The *Restatement (Second) of Torts* does allow for the recovery of an increase in value of "commodities of fluctuating value" for a reasonable period of time after a conversion. *Id.*, § 927(1)(b). Such commodities are those customarily traded on public exchanges such as stocks, bonds and other securities, or fungible goods such as grain, cotton, oil and the like.

Therein lies our problem: we simply do not know whether timber to be cut by the buyer is a "commodity of fluctuating value." We cannot, of course, take judicial notice one way or the other. Thus, we shall remand for a new trial as to damages. If it is established that the timber, under the circumstances of this case, was indeed a "commodity of fluctuating value," then the trial judge's assessment would not have been either clearly erroneous or an abuse of discretion. On the other hand, absent some reasonable explanation, under the traditional rule of conversion damages as stated above, an award of damages in an amount up to 30% above the loss on the date of conversion may be excessive.

*Thompson's Attorney's Fees*

At the conclusion of the case, the trial court awarded to the Thompsons' attorney's fees in the amount of $7,500 pursuant to Maryland Rule 1–341. The trial court stated that appellants brought suit against the Thompsons in "bad faith" and "without substantial justification." Appellants maintain that the trial court's award of attorney's fees was clearly erroneous in light of the fact that the trial court had earlier refused to dismiss their complaint, which appellants later dropped with the exception of a claim for costs of defending suit against the Thompsons should the Bohles prevail.

 Assessment of attorney's fees under Rule 1–341 is within the sound discretion of the trial court, and such a sanction will not be disturbed on appeal unless it is clearly erroneous. *Dent v. Simmons*, 61 Md.App. 122, 127, 485 A.2d 270 (1985). Although a finding of bad faith does not necessarily involve an examination of the merits of the case, a finding that a cause of action was brought or maintained without substantial justification does require such an examination. To prevent placing a chill on a person's right to resort to the judicial system for legal redress, a trial court's finding under Rule 1–341 must transcend a determination of who the prevailing party will be. A person has a right to "lose" within the judicial system without incurring the added imposition of paying the other side's attorney's fees. Thus, the mere fact that the Bohles were found to be liable for conversion is insufficient for attorney's fees to be assessed against them.

 We think, however, that other circumstances are present that justify the imposition of attorney's fees. The court determined that the Bohles were untruthful in regard to their testimony on the stand concerning whether they knew about the timber contract prior to their purchase of the property. In contrast, the court found that the Thompsons' testimony as to what transpired was truthful. Further, after the Bohles committed the intentional and

tortious act for which they were eventually found liable, *they* brought suit against the Thompsons for fraud and various related counts. Only on the eve of trial were these counts abandoned.

In *Watson v. Watson,* 73 Md.App. 483, 534 A.2d 1365 (1988), we upheld a trial court's assessment of attorney's fees against appellant and his wife. In so holding, we weighed heavily the fact that not only did the trial court find that appellant had engaged in a fraudulent conveyance, but that he brought suit against his former wife for having attached the same property that he had earlier fraudulently conveyed.

Where a trial court finds that not only did a party engage in intentional, tortious conduct, but that the same party also brought suit against an innocent party in regard to the same circumstances for which he is ultimately found liable, an award of attorney's fees to enable the innocent party to recover his costs in defending the suit is not clearly erroneous. In the instant case, a finding of "bad faith" or that the suit was brought "without substantial justification" was appropriate.

### Charlotte Hall's Unspecified Attorney's Fees

After Charlotte Hall filed its complaint for injunctive relief and damages, the Bohles filed a motion for a more definite statement. The lower court denied the Bohles' motion and granted Charlotte Hall's request for Rule 1–341 attorney's fees. No specific amount of attorney's fees was awarded.

The judge that decided appellants' motion for a more definite statement was not the same judge that presided over the trial. On March 17, 1987, Judge C. Clarke Raley entered an order denying appellants' motion and assessing attorney's fees against appellants pursuant to Maryland Rule 1–341. No specific amount was ordered to be paid. Judge Raley did not expressly retain any authority to determine subsequently any amount, nor does the record

indicate that Charlotte Hall ever submitted any figures purporting to establish their expenses and costs in contesting appellants' motion for a more definite statement. After the two-day trial, Judge Woods expressly refused to assess attorney's fees against the Bohles on the basis of Rule 1–341 or any other theory. Judge Woods did not expressly retain jurisdiction to resolve any issue pending. Although in some instances a trial court may retain jurisdiction to consider and assess attorney's fees while an appeal is pending, the cases that have allowed such an action either involve an express reservation of jurisdiction to assess attorney's fees, *see Kirsner v. Edelmann,* 65 Md.App. 185, 193, 499 A.2d 1313 (1985); *Maryland Nat'l Capital Park & Planning Comm'n v. Crawford,* 59 Md.App. 276, 304, 475 A.2d 494 (1984), *aff'd,* 307 Md. 1, 511 A.2d 1079 (1986), or the determination that attorney's fees "did not affect the subject matter on appeal." *See Dent,* 61 Md.App. at 130, 485 A.2d 270. In *Dent,* we noted:

> [T]he better practice in most cases would be to determine [attorney's fees] before judgment becomes final on the case in chief, in order to avoid successive appeals. We recognize, of course, that in certain cases the issues relating to attorney's fees may be more time consuming and more complex than the case that gives them birth. Indeed, the decision of the appellate court on the matters in chief may even vitiate the basis for an award of counsel fee. Under those and possibly other circumstances, it may be wiser for the trial judge to defer determining the issue of attorney's fees until after completion of the appellate process. This we leave to the sound discretion of our trial judges.

*Id.*

In this case, Judge Raley had already determined that an assessment of attorney's fees was appropriate. In the thirteen months between this pre-trial determination and the trial, Charlotte Hall did not initiate any action to resolve the amount of attorney's fees it should be awarded. The case is now on appeal; we can only assume that Charlotte

Hall will attempt to submit documentation as to its attorney's fees to the circuit court after the appeal is resolved. This would lead to the very real possibility of a second appeal which could have and should have been avoided.

Where a party seeks attorney's fees based on pre-trial proceedings maintained or defended by another party and determination of the attorney's fee issue may be had without inquiry into the merits of the substantive action, it would be an abuse of discretion for the lower court to wait until an appeal has been noted and decided to determine either the merits or amount of the pre-trial attorney's fees issue. Judicial economy is better served, and the expense and delay of two parallel appellate actions would be avoided, where such a determination can be made prior to divestment of the trial court's jurisdiction over the main body of the cause of action. The responsibility of ensuring that a pre-trial attorney's fees issue is resolved prior to appeal rests on the party seeking the fees. Therefore, in this case, we hold that Charlotte Hall, by its inaction during the 13–month period, has waived its right to have specific attorney's fees imposed pursuant to Judge Raley's order.

## Conclusion

We hold that the lower court did not err in allowing testimony as to the Bohles' knowledge of the timber contract prior to signing a contract of sale to purchase land from the Thompsons. Further, the trial court did not err in finding that the Bohles converted Charlotte Hall's timber. The issue of conversion damages must be remanded for further proceedings not inconsistent with this opinion. The assessment of attorney's fees against the Bohles as to the Thompsons was appropriate; however, Charlotte Hall has waived any determination as to the amount of attorney's fees to which it was entitled pursuant to Judge Raley's pre-trial order.

JUDGMENT IN FAVOR OF CHARLOTTE HALL VA-
CATED AS TO DAMAGES ONLY AND CASE REMAND-
ED FOR FURTHER PROCEEDINGS NOT INCONSIST-
ENT WITH THIS OPINION; ORDER FOR ATTORNEY'S
FEES IN FAVOR OF CHARLOTTE HALL VACATED;
COSTS TO BE PAID BY THE APPELLANTS.

ROBERT M. BELL, J., dissents with opinion

ROBERT M. BELL, Judge.

I respectfully dissent from the majority opinion insofar as
it affirms the trial court's award of counsel fees in favor of
Harold Rodney Thompson and his wife and its admission of
testimony by the Thompsons,[1] tending to vary the terms of
their contract with James K. Bohle and his wife, appellants,
for the sale of certain real property. Because I believe both
rulings to be prejudicial error, I would reverse both the
judgment in favor of Charlotte Hall and the judgment in
favor of the Thompsons for counsel fees. I would remand
the former for new trial.

It is well-settled that

> ... When the contractual language is clear and unambig-
> uous, and in the absence of fraud, duress, or mistake,
> parol evidence is not admissible to show the intention of
> the parties or to vary, alter or contradict the terms of
> [their] contract. (Citations omitted)

*General Motors Acceptance v. Daniels,* 303 Md. 254, 261–
62, 492 A.2d 1306 (1985). The Thompsons are parties to the
contract with appellants for the sale of real property and
the deed which flowed from it. And, because, far from
being silent on the subject, the contract of sale specifically
stated that the property was sold "with all trees" and
purported to "[contain] the final and entire agreement be-

---

1. To be sure, Charlotte Hall called other witnesses who also testified
to appellants' knowledge of its purchase of the timber from the
Thompsons; however, none was as important as the Thompsons.
Consequently, I do not believe that the error in this case was harm-
less.

tween the parties," their testimony to the effect that they sold the property subject to a prior contract for the sale of the timber necessarily tends to contradict the contract and the deed. This, they cannot, and should not have been permitted to, do, especially when, as here, Thompson was a real estate broker who supplied the contract.

Like appellants, and contrary to the majority, *see* n. 2 of the majority opinion, I find *Pumphrey v. Kehoe*, 261 Md. 496, 276 A.2d 194 (1971) most apposite. In that case, Pumphrey sold property to Tessitore under a written contract which required Tessitore to pay Pumphrey an additional $6600.00 upon the successful rezoning of the property. Having unsuccessfully sought rezoning, Tessitore sold the property, along with his appeal rights in connection with the rezoning, to Kehoe. The contract of sale was silent as to Kehoe's obligation to pay Pumphrey should he succeed in obtaining rezoning. Pumphrey sued both Tessitore and Kehoe and sought to prove, using parol evidence, not only that Kehoe was aware of the additional payment requirement in the Pumphrey/Tessitore contract, but also that Kehoe had expressly assumed the obligation. Kehoe, of course, denied that this was so. The trial judge initially admitted the parol evidence, but later, upon motion for judgment notwithstanding the verdict, granted a new trial. The evidence was held inadmissible at the new trial and Pumphrey appealed. The Court of Appeals affirmed.

The majority makes much of the fact that Pumphrey involves the alleged assumption of an obligation by a third party and not, as is the case here, a demonstration that a party to a contract has prior knowledge of a prior equity in the subject matter of the contract. I fail to see the distinction insofar as it relates to the Thompsons. In my view, under these circumstances, the Thompsons simply cannot be heard to offer testimony that would vary their contract. To permit them to do so, even under the guise of supplying testimony on behalf of a "stranger" to the contract, undermines considerably the parol evidence rule and runs the risk that any transaction involving the conveyance of real prop-

erty and fixtures could give rise to a contest concerning title to the fixtures. In such a contest, the victor would be determined on the basis of who is able more convincingly to testify as to what the parties intended. The written document would be rendered of little or no force or effect.[2]

Maryland Rule 1–341 involves actions brought in bad faith or which are unjustified. It provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

This rule "is not intended to penalize a party and/or counsel for asserting a colorable claim or defense." *Yamaner v. Orkin*, 313 Md. 508, 516, 545 A.2d 1345 (1988), citing *Legal Aid Bureau, Inc. v. Farmer*, 74 Md.App. 707, 539 A.2d 1173 (1988); *Dent v. Simmons*, 61 Md.App. 122, 485 A.2d 270 (1985). In *Farmer*, we were emphatic in stating that

> Rule 1–341 represents a limited exception to the general rule that attorney's fees are not recoverable by one party from an opposing party. It is intended to prevent parties and lawyers from *abusing* the judicial process by filing or defending actions and proceedings "without substantial justification" or "in bad faith". It is not intended to punish legitimate advocacy. (Emphasis in original)

---

**2.** The majority points to *Peruzzi Brothers, Inc. v. Contee*, 72 Md.App. 118, 527 A.2d 821 (1987) for the proposition that one who is not a bonafide purchaser may not invoke the parol evidence rule in an action to quiet title. While the rule is as the majority states it, *it* has no application to this case. The question at issue here is whether appellants are bonafide purchasers. It is the parol evidence upon which the trial judge necessarily must rely in determining appellants' status. This is to be contrasted with the situation in *Contee*, where there was an abundance of evidence denoting a mutual mistake on the part of the grantor and the grantee; moreover, there were no self-serving declarations by the parties to the contract as there are here.

*Id.,* 74 Md.App. at 722, 539 A.2d 1173. In *Dent v. Simmons,* we expressed the view that

> [f]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a *colorable* claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties.

*Id.,* 61 Md.App. at 124, 485 A.2d 270, quoting *Young v. Redman,* 55 Cal.App.3d 827, 838, 128 Cal.Rptr. 86 (1976). Most recently, in *Legal Aid Bureau, Inc. v. Bishop's Garth Associates Ltd. Partnership,* 75 Md.App. 214, 224, 540 A.2d 1175 (1988), we said:

> Maryland Rule 1–341 is not, and never was intended, to be used as a weapon to force persons who have a questionable or innovative cause to abandon it because of a fear of the imposition of sanctions. Rule 1–341 sanctions are judicially guided missiles pointed at those who proceed in the courts without any colorable right to do so. . . . No one who avails himself or herself of the right to seek redress in a Maryland court of law should be punished merely for exercising that right.

We also addressed in *Bishop's Garth, albeit* in the context of sanctions imposed upon counsel, the very issue presented here—how the factfinder's assessment of credibility affects the applicability of Maryland Rule 1–341. After observing that whether an action is substantially justified is not to be determined from the vantage point of judicial hindsight, Chief Judge Gilbert addressed the situation where a credibility issue has been presented by the testimony:

> We observe that it is the province of the jury to assess credibility when confronted with conflicting testimony. . . . The fact that a jury may believe one witness instead of others does not mean that the party whose witnesses were not believed defended in "bad faith" or "without substantial justification". Trial counsel's role is that of advocate, not that of trier of fact or judge. As a matter of law, a reasonable basis for believing that a case

will generate a factual issue for the fact finder at trial provides substantial justification for defending an action.... (Citations omitted)

75 Md.App. at 223, 540 A.2d 1175.

What we said in *Bishop's Garth* applies with equal force to the situation *sub judice*. If there are factual issues generated, the fact that the court chooses to believe one litigant over the other is no basis for a finding of lack of substantial justification or bad faith. To hold otherwise is tantamount to assessing costs on the losing party. If this is the state of the law, then there *is* a chilling effect on a person's resort to the judicial system for legal redress. And, notwithstanding the majority's protestations to the contrary, that is precisely what the majority permits and, indeed, encourages by this ruling. The court did find the Bohles to be untruthful and the Thompsons to be truthful; it is conceivable, however, that another factfinder, given the same evidence and viewing the same witnesses, would have reached a contrary result. That one factfinder is convinced of the untruthfulness of a party is not a sufficient basis upon which to impose Rule 1–341 sanctions. I think the award of counsel fees to the Thompsons was clearly erroneous.